

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of June, two thousand eighteen.

PRESENT:  JON O. NEWMAN,
  JOSÉ A. CABRANES,
  SUSAN L. CARNEY,
  *Circuit Judges.*

─────────────────────────────

UNITED STATES OF AMERICA,

  *Appellee,*  17-171-cr

  v.

RAPHAEL OSBORNE, AKA GUSTO,

  *Defendant-Appellant.*\*

─────────────────────────────

---

\* The Clerk of Court is directed to amend the caption as set forth above.

1

MANDATE ISSUED ON 08/30/2018

| FOR APPELLEE: | Nicole Boeckmann, Jo Ann M. Navickas, Christopher C. Cafferone, Michael Maffei, *for* Richard P. Donoghue, United States Attorney for the Eastern District of New York, Brooklyn, NY. |
|---|---|
| FOR DEFENDANT-APPELLANT: | Robert J. Boyle, Law Office of Robert J. Boyle, New York, NY. |

Appeal from a judgment of the United States District Court for the Eastern District of New York (Joanna Seybert, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the January 18, 2017 judgment of the District Court be and hereby is **AFFIRMED.**

Defendant-appellant Raphael Osborne ("defendant" or "Osborne") appeals from a judgment convicting him, after a jury trial, of: (1) racketeering in violation of 18 U.S.C. § 1962(c) (Count One); (2) racketeering conspiracy in violation of 18 U.S.C. § 1962(d) (Count Two); (3) Hobbs Act robbery conspiracy in violation of 18 U.S.C. § 1951(a) (Count Three); (4) Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) (Count Four); (5) brandishing firearms during a crime of violence, Hobbs Act conspiracy and robbery, in violation of 18 U.S.C. § 924(c)(1)(C)(i) (Count Five); (6) Hobbs Act robbery conspiracy in violation of 18 U.S.C. § 1951(a) (Count Six); (7) Hobbs Act robbery in violation of 18 U.S.C. § 1951(a) (Count Seven); (8) brandishing a firearm during a crime of violence, Hobbs Act conspiracy and robbery, in violation of 18 U.S.C. § 924(c)(1)(C)(i) (Count Eight); (9) murder conspiracy in violation of 18 U.S.C. § 1959(a)(5) (Count Nine); (10) attempted murder in violation of 18 U.S.C. § 1959(a)(5) (Count Ten); (11) assault with a dangerous weapon in violation of 18 U.S.C. § 1959(a)(3) (Count Eleven); (12) witness retaliation in violation of 18 U.S.C. § 1513(a)(1)(B) (Count Twelve); (13) witness retaliation conspiracy in violation of 18 U.S.C. §§ 1513(f), 1513(a)(1)(B), 1513(a)(2)(B) (Count Thirteen); (14) discharging a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(C)(i) (Count Fourteen); (15) attempted murder of a rival gang member in violation of 18 U.S.C. § 1959(a)(5) (Count Fifteen); (16) assault of a rival gang member in violation of 18 U.S.C. § 1959(a)(3) (Count Sixteen); (17) discharging a firearm during a crime of violence in violation of 18 U.S.C. § 924(c)(1)(C)(i) (Count Seventeen); (18) conspiracy to distribute controlled substances in violation of 21 U.S.C. §§ 846, 841(b)(1)(A)(iii) (Count Eighteen); (19) use of firearms during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Nineteen); (20) conspiracy to murder and assault rival gang members with dangerous weapons in violation of 18 U.S.C. §§ 1959(a)(5), 1959(a)(6) (Count Twenty); and (21) illegal possession of ammunition in violation of 18 U.S.C. §§ 922(g), 924(a)(2) (Count Twenty-One).

The District Court sentenced Osborne principally to three consecutive life terms of imprisonment on Counts One, Two, and Eighteen, to be followed by 135 years' imprisonment, as indicated in defendant's written judgment, as to all other counts. We assume the parties' familiarity with the facts, the underlying procedural history, and the issues on appeal.

Osborne raises several claims on appeal. He first argues that the evidence was insufficient to convict him of racketeering, racketeering conspiracy, and the several substantive charges associated with the racketeering counts. He next argues that the District Court erred in: (1) denying his *Batson* challenge at trial; (2) instructing the jury that it could convict him based on a *Pinkerton* theory of liability for charges arising under New York State law; (3) denying his pre-trial *Franks* motion to suppress evidence without a hearing; (4) precluding him from calling two Nassau County Police Department detectives as witnesses; (5) admitting hearsay evidence via the testimony of cooperating witness Daron Morris; (6) admitting irrelevant and inflammatory photographs at trial; and (7) imposing a sentence that he contends is substantively unreasonable. He further argues that the written judgment must be amended to reflect a sentence of 115 years plus three life terms. We consider these issues *seriatim*.

I.

Osborne first argues that the evidence was insufficient to support five of the six racketeering predicate acts that supported his conviction for racketeering and racketeering conspiracy, as well as the substantive counts related to those racketeering acts. Specifically, he argues that there was insufficient evidence of an agreement by Osborne and others to distribute controlled substances. He also contends that there was insufficient evidence to establish that the Hobbs Act robberies outlined in the indictment were related to his gang activity. Last, he argues that the evidence was insufficient to demonstrate that he attempted to murder and assault Johnny Greene, or that he conspired to murder and assault rival gang members.

An insufficiency claim faces a "very heavy burden." *United States v. Desena*, 287 F.3d 170, 177 (2d Cir. 2002). We must uphold a jury verdict if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). We "view[ ] the evidence in the light most favorable to the government and draw[ ] all inferences in favor of the government." *United States v. Henry*, 325 F.3d 93, 103 (2d Cir. 2003). Upon a review of the record, we conclude that there was sufficient evidence to sustain the jury's verdict on all of the challenged counts.

The evidence was more than sufficient to prove that Osborne possessed and sold drugs with and for the benefit of his fellow gang member coconspirators. Although a buyer-seller relationship "without more" is insufficient to establish a drug distribution conspiracy, *see United States v. Brock*, 789 F.3d 60, 63-64 (2d Cir. 2015), the jury could have reasonably concluded that there was "more"

3

here, based on evidence that: rivals were afraid to rob drug dealers affiliated with the gang; gang members maintained confederates' drug sale relationships when one of their number was incarcerated; and gang members bought and sold narcotics with one another. Relatedly, the "Trackside" and "Fish" robberies presented to the jury by the government were clearly related to the criminal enterprise of which defendant was an integral part because they "enrich[ed] core members of the enterprise," *United States v. Payne*, 591 F.3d 46, 64 (2d Cir. 2010). Upon review of the record, we also find that the government presented more than sufficient evidence to prove defendant's involvement in the attempted murder of Johnny Greene. Any inconsistencies in the testimony of Aaron Halyard were resolved by the jury and the jury's evaluation of this testimony may not be disturbed on appeal. *See United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992). Osborne's argument that there was insufficient evidence of a conspiracy to murder rival gang members fails for the same reason.

II.

Osborne's *Batson* challenge is also without merit. The presiding judge's evaluation of whether a proffered explanation is pretextual is reviewed for clear error, and is entitled to "great deference." *Hernandez v. New York*, 500 U.S. 352, 364 (1991). The government made clear to the District Court that it chose to strike juror 25 because her brother had a drug problem that had led to a prior arrest. The District Court did not clearly err in concluding that this was a race-neutral, non-pretextual reason for the government's strike. Osborne points to two non-African-American jurors with similar background information whom the government did not strike. One of these jurors (Juror 14) was excused on the mutual consent of both parties, before either party exercised peremptory challenges. The government proffered a plausible reason for why it chose not to strike the other similarly-situated juror (Alternate Juror 1), who was ultimately stricken by Osborne himself. We thus find no clear error on the part of the District Court.

III.

We reject Osborne's next claim, that the District Court erred in instructing the jury on *Pinkerton* liability in relation to two counts of defendant's indictment that charged him with violating the Violent Crimes in Aid of Racketeering ("VICAR") statute. Defendant principally argues that the *Pinkerton* instruction was error because the violent crimes underlying the VICAR charges were state offenses, and New York law rejects *Pinkerton* liability. *See People v. McGee,* 49 N.Y.2d 48, 56–58, 424 N.Y.S.2d 157, 161–62, 399 N.E.2d 1177, 1181-82 (1979).

Osborne's argument is foreclosed by *United States v. Diaz,* 176 F.3d 52 (2d Cir. 1999). In that case, we rejected a similar challenge to a *Pinkerton* instruction for a VICAR charge based on a violent crime under Connecticut law. In so holding, our Court stated that "the racketeering statutes are not meant to incorporate state procedural and evidentiary law; rather, references to state law in these

4

statutes merely serve a definitional purpose, that is, to identify generally the kind of conduct made illegal by the federal statute." *Id.* at 100.

Subsequent panels of this Court have expressed concern about *Diaz*'s continued viability. *See, e.g.*, *United States v. Carrillo*, 229 F.3d 177, 185 (2d Cir. 2000); *United States v. Pimentel*, 346 F.3d 285, 302-05 (2d Cir. 2003). Nevertheless, we have not expressly disavowed *Diaz*, and *Diaz* remains controlling authority. *See United States v. Sanchez*, 623 F. App'x 35, 38-39 (rejecting the argument that the district court plainly erred in permitting the jury to find *Pinkerton* liability when the crimes underlying defendant's VICAR charges were New York State offenses).

Whatever the precise contours of *Diaz*'s holding—*i.e.*, whether as Osborne argues, it permits *Pinkerton* instructions only with respect to VICAR predicate crimes proscribed by states with state-law *Pinkerton* analogues—*Diaz's* broad language and continued applicability precludes a determination that the District Court's *Pinkerton* instruction here constituted plain error.

IV.

Osborne next contends that the District Court erred in denying him a *Franks* hearing relating to a wiretap of his cell phone and a search warrant application to search his home. On appeal from a ruling on a motion to suppress evidence, we review legal conclusions *de novo* and findings of fact for clear error. *United States v. Freeman*, 735 F.3d 92, 95 (2d Cir. 2013). We generally review discretionary decisions on whether a district court ought to conduct a hearing for "abuse of discretion." *See United States v. Pena,* 961 F.2d 333, 339 (2d Cir. 1992). Under *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant is entitled to a hearing if he "make[s] a substantial preliminary showing that: (1) the claimed inaccuracies or omissions are the result of the affiant's deliberate falsehood or reckless disregard for the truth; and (2) the alleged falsehoods or omissions were necessary to the judge's probable cause finding." *United States v. Salameh*, 152 F.3d 88, 113 (2d Cir. 1998). While defendant correctly observes that one item of information included in the affidavit accompanying the government's wiretap application was erroneous,[1] we agree with the District Court that the information was neither material nor necessary to an ultimate finding of probable cause. The affidavit included numerous other statements, text messages, and evidence establishing probable cause to believe that defendant was involved in criminal activity. We reject defendant's challenge to the execution of a search warrant on his home for the same reason.

---

[1] The affidavit incorrectly stated that Osborne was the triggerman in the attempted murder of confidential informant Maurice Gardener.

5

V.

Defendant argues that the District Court violated his Sixth Amendment Confrontation Clause right and his Fifth Amendment right to due process by prohibiting him from calling Nassau County Police Department Detectives George Colby and John Mitchell. We disagree. "Absent a clear abuse of discretion, a trial judge retains a wide latitude to exclude irrelevant, repetitive, or cumulative evidence." *United States v. Holmes*, 44 F.3d 1150, 1157 (2d Cir. 1995) (citing *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)). We find no abuse of discretion in the District Court's decision to not permit the defendant to call these two witnesses to testify.

The District Court thoroughly explored defendant's reason for wanting to call the two witnesses, and concluded that defendant was seeking to relitigate the District Court's ruling on the wiretap affidavit. The District Court appropriately found this to be an impermissible purpose for which to call the two witnesses. Moreover, defendant had ample opportunity to cross examine Detective Colby when he testified during the government's case in chief. The District Court, over the government's objection, permitted defense counsel to question beyond the scope of Colby's direct examination.

VI.

Osborne argues that the District Court erred in permitting cooperating witness Daron Morris to testify that he had been told by Rommel Lobban that Osborne "ordered the hit on Gardner." We review the admission of the statement for plain error, because defendant did not object to the testimony at trial. *United States v. Olano*, 507 U.S. 725, 732 (1993). The plain error standard is satisfied when: (1) "there [is] an error that has not been intentionally relinquished or abandoned"; (2) the error [is] plain—that is to say, clear or obvious"; (3) the error . . . affected the defendant's substantial rights"; and (4) "the error seriously affects the fairness, integrity or public reputation of judicial proceedings." *Rosales-Mireles v. United States*, -- S. Ct. --, 2018 WL 3013806, at *5 (U.S. June 18, 2018).

Though Lobban's statement to Morris was, in fact, hearsay, Osborne has not demonstrated that the admission of Morris's testimony seriously affected the fairness, integrity or public reputation of judicial proceedings. The government presented ample evidence from which the jury could conclude that Osborne ordered Gardner's murder. This evidence included: (1) Morris's testimony that Osborne told him he ordered younger gang members to kill Gardner; (2) testimony from Denzel Smith, who admitted he was the person who shot Gardner, that Osborne and one of his lieutenants told him to do so; and (3) testimony from Aaron Halyard that, when Osborne learned Gardner had emerged from his coma, Osborne was upset that Gardner was not dead. In light of this substantial, probative evidence, any error the District Court committed in not *sua sponte* precluding Morris's testimony did not seriously affect the fairness or integrity of the proceedings.

VII.

We next reject defendant's argument, also raised for the first time on appeal, that the District Court improperly admitted unduly inflammatory crime scene and autopsy photos during the trial. We review the admission of evidence without objection for plain error. *United States v. Pierce*, 785 F.3d 832, 840 (2d Cir. 2015). The crime scene and autopsy photos were plainly relevant. The government was required to prove beyond a reasonable doubt the murders for which it charged Osborne and his associates were responsible. The fact that the photos might have been graphic does not render them unfairly prejudicial under Rule 403, and their admission was certainly not plain error.

VIII.

Last, defendant claims that his sentence of more than three life terms is substantively unreasonable. In the absence of procedural error, we will identify a sentence as substantively unreasonable only in "exceptional cases where the trial court's decision cannot be located within the range of permissible" sentences. *United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (internal quotation marks omitted); *see also United States v. Jones*, 531 F.3d 163, 174 (2d Cir. 2008) (recognizing that "in the great majority of cases, a range of sentences—frequently extending well beyond the narrow ranges prescribed by the Guidelines—must be considered reasonable").

Osborne does not argue that the District Court erred in calculating his applicable Guidelines range to be life imprisonment. Moreover, defendant's sentence was not substantively unreasonable. After calculating the applicable Guidelines range, the District Court considered the factors set forth in 18 U.S.C. § 3553(a) before determining that life imprisonment was a just punishment considering defendant's crimes. Defendant's sentence is not substantively unreasonable merely because multiple life sentences were imposed. *Cf. United States v. Yousef*, 327 F.3d 56, 163 (2d Cir. 2003).

Defendant also asks this Court to direct the District Court to amend its written judgment to reflect its oral pronouncement at sentencing. The District Court at sentencing imposed, on top of defendant's three life terms, specific sentences on various counts that totaled 135 years. However, the Court made an arithmetic mistake by stating that these specific sentences totaled 115 years. The judgment used the 135-year total for the specific sentences that the Court had orally imposed. Although an oral pronouncement of sentences controls in the event of variance from a written judgment, here the written judgment reflects the correct total of the individual sentences that court pronounced orally. The judgment need not be amended.

## CONCLUSION

We have considered defendant's remaining arguments and find them to be without merit. For the foregoing reasons, we **AFFIRM** the judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

8