UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
RAPHAEL OSBORNE,

                   Petitioner,

                                MEMORANDUM AND ORDER
      -against-                14-CR-0264(JS)

UNITED STATES OF AMERICA,

                   Respondent.
-------------------------------------X
APPEARANCES
For Petitioner:     Raphael Osborne, pro se
                #83520-053
                U.S.P. Pollock
                P.O. Box 2099
                Pollock, Louisiana 71467

For Respondent:     Michael R. Maffei, Esq.
                Christopher Caffarone, Esq.
                Nicole Boeckmann, Esq.
                United States Attorney's Office
                Eastern District of New York
                610 Federal Plaza
                Central Islip, New York 11722

SEYBERT, District Judge:

        On December 5, 2019, pro se petitioner Raphael Osborne
("Petitioner") moved to vacate, set aside, or correct his
conviction and sentence pursuant to 28 U.S.C. § 2255 (hereafter,
the "Petition"). (See ECF No. 603; see also Support Memo, ECF No.
629.) The Government opposes the Petition. (See Opp'n, ECF No.
665.) For the reasons that follow, Petitioner's Motion is **DENIED**
in its entirety.

BACKGROUND

I.    The Underlying Crimes[1]

     A.    The Gang, Generally

          Petitioner was the leader and co-founder of the Rollin'
60s, a set of the Crips street gang based in Roosevelt, New York
(hereafter, the "Gang").  (Tr. 278:18-22.)  The Gang engaged in a
variety of criminal activities, including narcotics trafficking,
robbery, and murder.  By participating in these crimes, members
achieved higher standing in the Gang, i.e., the more crimes
committed by the member, the higher the member's rank.  Petitioner
was considered a "Big Whale", which was the highest rank (Tr.
272:15-21, 280:25-281:10) and had final say in the Gang's local
operations (Tr. 291:8-25, 1026:2-1027:9).  Under Petitioner's
leadership, among other things, members were required to attack
and kill rival gang members on sight (the "on sight rule").  For
example, in accordance with the "on sight rule", in 2006 and 2008,
Gang members shot and killed Bloods gang members solely because of
their gang affiliation.  (Tr. 485:1-487:7, 488:5-489:3, 495:25-
497:6, 1074:5-19, 1069:7-25.)  Additionally, Gang members were to

---

[1]  The Court presumes familiarity with the facts underlying this
case, but provides the following summary for the reader's
convenience, with the facts being drawn from the Superseding
Indictment (ECF No. 226), and Petitioner's criminal trial before
this Court held on March 8, 2016 through April 11, 2016.  See also
generally Hernandez v. United States, No. 14-CR-0264, 2021 WL
3426110, at *1-2 (E.D.N.Y. Aug. 5, 2021).

remain loyal to the Gang, which included refusing to cooperate with law enforcement. (Tr. 285:23-286:6, 287:8-22, 483:11-23, 1017:17-25, 1030:13-1031:22.) Infractions of the Gang's rules resulted in discipline, including the punishment of death for cooperating with law enforcement. (Tr. 288:10-19.)

B.   Various Criminal Activities by the Gang

In Fall 2010, Petitioner and Aaron Halyard ("Hayland"), along with other Gang members, committed robberies of two drug dealers. The first robbery was of a marijuana dealer known as "Fish" (hereafter, the "Fish Robbery"). (Tr. 455:2-456:23.) The day of the Fish Robbery, Petitioner, Halyard, and another Gang member drove to meet Fish; Halyard entered Fish's vehicle, took the marijuana, then displayed a firearm. (Tr. 459:13-460:4.) Petitioner then pulled Fish out of his car and struck him with the butt of a gun. (Tr. 460:5-19.)

A second robbery occurred in the "Trackside" neighborhood of Hempstead, New York (hereafter, the "Trackside Robbery"). On the day of that Robbery, Petitioner and Halyard, along with two other Gang members, drove to the "Trackside" neighborhood with firearms. (Tr. 449:12-22.) Armed with guns, Halyard and another Gang member robbed a drug dealer of five grams of cocaine, between fifteen and twenty grams of crack cocaine, and $1,500 in cash. (Tr. 450:18-453:10.)

In Spring 2012, Gang member Maurice Gardner ("Gardner") began operating as a confidential informant for the FBI during its investigation into the Gang's activities. (Tr. 171:17-172:10.) In that regard, Gardner had participated in five controlled purchases of firearms from Gang members. (Tr. 173:4-174:2, 181:25-184:15, 187:4-189:22.) Further, a Special Agent, David Biddiscombe ("Biddiscombe"), attempted to conduct a controlled purchase of a firearm from Petitioner, that did not occur when Petitioner became suspicious that Gardener was working as an informant. (Tr. 191:21-193:23, 583:14-584:19.) Later, Petitioner learned his suspicion regarding Gardner was correct; therefore, he conspired with fellow Gang member Derick Hernandez ("Hernandez") to murder Gardner. (Tr. 590:15-592:8.) Hernandez recruited Denzel Smith ("Smith"), who was interested in joining the Gang, to commit the murder. (Tr. 2009:17-2011:22 2014:3-18, 2038:6-2039:13.) Hernandez supplied Smith with a firearm to carry out the hit. Gardner survived the October 13, 2012 murder attempt by Smith, but was paralyzed from the waist down. (Tr. 1199:1-9.) Garner subsequently wrongfully identified Petitioner as the shooter and has maintained that mistaken belief. (Tr. 2440:19-2442:24.)

On January 30, 2013, Petitioner and fellow Gang members attempted to murder Bloods gang member Johnny Green ("Green") by firing multiple gunshots into a passing vehicle in which Green was

a passenger, striking Green in the stomach.   (Tr. 924:11-925:20.)
Green survived Petitioner's murder attempt.   (Tr. 2302:10-23.)

II.  Petitioner's Prosecution

Following his April 17, 2013 arrest for his
participation in criminal acts that arose from Gang activity,
Petitioner and his co-defendants, all Gang members, were indicted
under a Superseding Indictment, charging counts of various
racketeering and VICAR[2] offenses, weapons possession charges, and
narcotics and firearm trafficking charges.   (See Superseding
Indictment, ECF No. 226.)  A jury trial commenced before this Court
on March 8, 2016.

The Government's case included: testimony from (1) four
cooperators who were former members of the Gang, including Halyard
and Smith, (2) associates of the Gang who were also involved in
the Gang's criminal activities, (3) members of federal and local
law enforcement, and (4) expert witnesses; audio recordings of
phone conversations; copies of text messages; social media
postings and photographs; and audio recordings of gunfire.

After the Government rested, defense counsel informed
the Court that he was interested in calling co-conspirator
Hernandez and two Nassau County Police Department Detectives,
George Colby ("Colby") and John Mitchell ("Mitchell" and, together

---

[2] "VICAR" is an acronym for "Violent Crimes in Aid of Racketeering".

with Colby, "the Detectives"). (Tr. 2554:23-2560:23.) The Detectives were involved in the Gardner attempted murder investigation. Petitioner, speaking directly with the Court, stated he sought to call Mitchell to contest and re-litigate a wiretap affidavit. (Tr. 2561:5-22, 2565:1-2566:22.) The Court rejected Petitioner's application to call the Detectives. Ultimately, defense counsel did not call Hernandez as a witness (Tr. 2568:18-2569:2); nor did Petitioner testify.

On April 11, 2016, the jury convicted Petitioner of all twenty-one counts of the Superseding Indictment:

Count One: racketeering in violation of 18 U.S.C. § 1962(c);

Count Two: racketeering conspiracy in violation of 18 U.S.C. § 1962(d);

Count Three: Hobbs Act robbery conspiracy in violation of 18 U.S.C. § 1951(a);

Count Four: Hobbs Act robbery in violation of 18 U.S.C. § 1951(a);

Count Five: brandishing firearms during a crime of violence, Hobbs Act conspiracy and robbery, in violation of 18 U.S.C. § 924(c)(1)(C)(i);

Count Six: Hobbs Act robbery conspiracy in violation of 18 U.S.C. § 1951(a);

Count Seven: Hobbs Act robbery in violation of 18 U.S.C. § 1951(a);

Count Eight: brandishing a firearm during a crime of violence, Hobbs Act conspiracy and robbery, in violation of 18 U.S.C. § 924(c)(1)(C)(i);

Count Nine: murder conspiracy in violation of 18 U.S.C. § 1959(a)(5);

Count Ten: attempted murder in violation of 18 U.S.C. § 1959(a)(5);

Count Eleven: assault with a dangerous weapon in violation of 18 U.S.C. § 1959(a)(3);

Count Twelve: witness retaliation in violation of 18
U.S.C. § 1513(a)(1)(B);

Count Thirteen: witness retaliation conspiracy in
violation of 18 U.S.C. § § 1513(f), 1513(a)(1)(B),
1513(a)(2)(B);

Count Fourteen: discharging a firearm during a crime of
violence in violation of 18 U.S.C. § 924(c)(1)(C)(i);

Count Fifteen: attempted murder of a rival gang member
in violation of 18 U.S.C. § 1959(a)(5);

Count Sixteen: assault of a rival gang member in
violation of 18 U.S.C. § 1959(a)(3);

Count Seventeen: discharging a firearm during a crime of
violence in violation of 18 U.S.C. § 924(c)(1)(C)(i);

Count Eighteen: conspiracy to distribute controlled
substances in violation of 21 U.S.C. §§ 846,
841(b)(1)(A)(iii);

Count Nineteen: use of firearms during a drug
trafficking crime in violation of 18 U.S.C. §
924(c)(1)(A)(i);

Count Twenty: conspiracy to murder and assault rival
gang members with dangerous weapons in violation of 18
U.S.C. §§ 1959(a)(5), 1959(a)(6); and

Count Twenty-One: illegal possession of ammunition in
violation of 18 U.S.C. §§ 922(g), 924(a)(2).

(See Verdict Sheet, ECF No. 266.) On October 13, 2016, this Court

sentenced Petitioner to consecutive terms of life imprisonment on

Counts One, Two, and Eighteen; consecutive terms of 300 months'

imprisonment on Counts Five, Eight, Fourteen, and Seventeen; a

consecutive term of 60 months' imprisonment on Count Nineteen;

concurrent terms of 240 months' imprisonment on Counts Three, Four,

Six, Seven, Ten, Eleven, and Sixteen; concurrent terms of 120

months' imprisonment on Counts Nine, Fifteen, Twenty, and Twenty-

One; and concurrent terms of 360 months' imprisonment on Counts

Twelve and Thirteen; the aggregate term of imprisonment was three

7

consecutive life terms plus  a mandatory 135 years' imprisonment. (See Min. Entry, ECF No. 413; Sent'g J., ECF No. 414.)

III. Post-Conviction Proceedings

On January 19, 2017, Petitioner appealed his conviction and sentence to the Second Circuit Court of Appeals, challenging: (1) the sufficiency of evidence supporting his conviction; (2) denial of his Batson challenge; (3) the applicability of Pinkerton liability; (4) the denial of calling the Detectives as defense witnesses; (5) admission of alleged hearsay evidence; (6) admission of crime scene and autopsy photographs; and (7) his sentence being substantially unreasonable.  The Second Circuit rejected Petitioner's challenges and affirmed the Judgment of this Court.  See United States v. Osborne, 739 F. App'x 11 (2018).  It held: there was sufficient evidence to support Petitioner's racketeering convictions and this Court did not err by denying Petitioner a pre-trial Franks hearing with respect to the wiretap application, see id. at 15-17; this Court acted within its discretion in denying Petitioner's application to call the Detectives as defense witnesses, see id. at 17; and, Petitioner's other appellate claims were without merit, see id. at 15-18.

On December 5, 2019, Petitioner filed the instant Petition raising four claims: (1) there is "newly discovered evidence" supporting the vacatur of his conviction; (2) his convictions pursuant to Section 924(c) must be dismissed pursuant

to United States v. Davis, 139 S. Ct. 2319 (2019); (3) ineffective assistance of defense counsel; and (4) ineffective assistance of appellate counsel.  (See Petition.)  As part of his ineffective assistance of defense counsel claim, Petitioner alleges the following failures by counsel: (a) failure to raise a Brady violation; (b) failure to expose perjury by Colby; (c) failure to expose perjury by Biddiscombe; and (d) failure to call Mitchell as a defense witness.  (See id. at ECF 4-14; see also Support Memo.) The Government opposed the Petition on July 21, 2020, to which Petitioner replied on February 22, 2021.[3]  (See Reply, ECF No. 687.)

DISCUSSION

I.   The § 2255 Standard

Section § 2255(a) of Title 28 of the United States Code provides:

> [a] prisoner in custody under sentence of a
> court established by Act of Congress claiming
> the right to be released upon the ground that

---

[3]  In his Reply, Petitioner devotes five pages renewing arguments made on the record, as well as in multiple filings, asserting that the Court lacked subject matter jurisdiction and venue over his criminal prosecution.  (See Reply at ECF pp.2-6; see also Sept. 10, 2014 Aff., ECF No. 53; Dec. 21, 2016 Aff., ECF No. 400, at ECF pp.2-6.)   This Court has rejected that argument on numerous occasions and has explained its reasoning for its rejection in detail at Petitioner's sentencing.   To the extent Petitioner presses this same argument but under a theory of "sovereign citizenship", that theory has been uniformly rejected by courts in this Circuit and others.  See Bey v. New York, No. 11-CV-3296, 2012 WL 4370272, at *6 (E.D.N.Y. Sept. 21, 2012) (collecting cases).  Therefore, the Court declines to consider it here.

> the sentence was imposed in violation of the
> Constitution or laws of the United States, or
> that the court was without jurisdiction to
> impose such sentence, or that the sentence was
> in excess of the maximum authorized by law, or
> is otherwise subject to collateral attack, may
> move the court which imposed the sentence to
> vacate, set aside, or correct the sentence.

28 U.S.C. § 2255(a).  To obtain relief under § 2255, a petitioner must demonstrate "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice."  Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000) (internal quotation marks and citations omitted).  A petitioner must also show that the error had "substantial and injurious effect" that caused "actual prejudice." Brecht v. Abrahamson, 507 U.S. 619, 637 (1993) (internal quotation marks and citations omitted); Underwood v. United States, 166 F.3d 84, 87 (2d Cir. 1999) (applying Brecht to a § 2255 motion).

To "obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152-53, 166 (1982).  A court must exercise its discretion sparingly because § 2255 applications "are in tension with society's strong interest in the finality of criminal convictions."  Elize v. United States, No. 02-CV-1530, 2008 WL 4425286, at *5 (E.D.N.Y. Sept. 30, 2008) (internal

quotation marks and citation omitted); see also Brecht, 507 U.S. at 633-34.

II.   Analysis of Petitioner's Habeas Claims

    A.   The Newly Discovered Evidence Claim

Petitioner asserts that newly discovered evidence, in the form of an affidavit by Kurtis "Knoxx" Phillip (the "Phillip Affidavit"), supports his claim for habeas relief on the grounds that Smith committed perjury. (Petition at 5; Phillip Aff., ECF No. 629, at ECF pp.19-20.)   The Phillip Affidavit purports to demonstrate that Smith's trial testimony alleging Petitioner's involvement in the Gardner shooting was false, and that the Government should have been aware of Smith's false testimony.[4]   For the reasons below, Petitioner's claim is meritless.

To the extent that Petitioner proffers the Phillip Affidavit supports a claim for prosecutorial misconduct based on false testimony, Petitioner must establish: (a) that there was false testimony; (b) that the prosecution knew or should have known that the testimony was false; and (c) that there was "any reasonable likelihood that the perjured testimony could have

---

[4]   Petitioner's instant claim is also related to his ineffectiveness claims alleging that the Government withheld purported Brady material, namely various cell phone records which he alleges would have shown that he was not involved in Gardner's attempted murder.   The Phillip Affidavit professes to demonstrate what those records would have shown, which, without more, is tantamount to speculative and conclusory assertions.

affected the judgement of the jury." United States v. Helmsley, 985 F. 2d 1202, 1205-06 (2d Cir. 1993) (quoting United States v. Agurs, 427 U.S. 97, 103 (1976)).  The threshold question is whether the witness in fact committed perjury.  See United States v. Monteleone, 257 F. 3d 210, 219 (2d Cir. 2001).  Petitioner has the burden of demonstrating by a preponderance of the evidence that the witness did commit perjury.  See Boyle v. United States, No. 10-CV-2639, 2013 WL 6684995, at *2 (E.D.N.Y. Dec. 18, 2013).

Here, Petitioner is unable to meet his burden of establishing Smith committed perjury.  As an initial matter, the Phillip Affidavit repeats Petitioner's conclusory assertions regarding exculpatory phone records.  Phillip alleges that the Government ignored "cell phone tower records" that would have demonstrated that the meeting discussing Gardner's shooting never actually occurred. (Phillip Aff. at ¶ 1.)  However, the Government is not, and never has been, in possession of any such phone records. (See Opp'n at 12-13.)  Nor has Petitioner provided copies of the phone records to support his claim and defeat the Government's representation.

The remainder of the Phillip Affidavit does not demonstrate that any portion of Smith's trial testimony was false.  To the extent Phillip contends that the Government wiretapped his phone, and, therefore, would know that he was not in communication with Petitioner before Gardner's shooting that is irrelevant. (See

Phillip Aff. at ¶ 2.)  While law enforcement obtained warrants to wiretap Petitioner's and Hernandez's cell phones, those wiretapping did not commence until after the Gardner shooting. (See Opp'n at 17.)  Moreover, Phillip affirms that Gardner stated Phillip did not shoot him, which is not inconsistent with Smith's testimony that Smith was the shooter.  (Cf. Phillip Aff. at ¶ 3, with Tr. 2058-2071.)  Additionally, Phillip declares that he and Petitioner were not present at the shooting, and they were not identified by any eyewitness.  (Phillip Aff. at ¶ 4.)  Again, these statements do not contradict Smith's testimony.

As such, the Phillip Affidavit does not provide any actual "newly discovered evidence" and fails the threshold inquiry that any portion of Smith's testimony was false.  Accordingly, Petitioner's new-evidence claim is without merit.

B.   The *Davis* Claim

Petitioner claims that he is entitled to habeas relief on the grounds that each of his convictions under 18 U.S.C. § 924(c) -- Counts Five, Eight, Fourteen, Seventeen, and Nineteen -- should be vacated pursuant to United States v. Davis, 139 S. Ct. 2319 (2019).  (Petition at 9; Support Memo at ECF p.11.)  For the following reasons, Petitioner's claim is denied.

In Johnson v. United States, the Supreme Court held that the Armed Career Criminal Act's residual clause, that defined a "violent felony," was unconstitutionally vague and violated due

13

process because it left "grave uncertainty about how to estimate the risk posed by a crime."  576 U.S. 591, at 593-97 (2015). Following Johnson, litigants sought to apply its holding to other statutes including, as relevant here, Section 924(c).  See, e.g., Davis, 139 S. Ct at 2325.  A defendant violates Section 924(c) if he used or carried a firearm during and in relation to, or possessed a firearm in furtherance of, a "crime of violence" or "drug trafficking crime."  18 U.S.C. § 924(c)(1)(A).  Section 924(c)(3) defines a crime of violence as "an offense that is a "felony" and:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3)(A) & (B).  Subsection (c)(3)(A) is often referred to as the elements or force clause (hereinafter, the "Elements Clause"), with subsection (c)(3)(B) often called the residual or risk-of-force clause (hereinafter, the "Residual Clause").  See Davis, 139 S. Ct. at 2324.

In light of its recent holdings in Johnson and in Sessions v. Dimaya, 138 S. Ct. 1204 (2018), in Davis, the Supreme Court invalidated the Residual Clause of Section 924(c) as unconstitutionally vague.  See Davis, 139 S. Ct. at 2325-27.  Thus, a conviction under Section 924(c) survives only if a predicate

14

offense is a "crime of violence" under the Elements Clause.  See, e.g., Rosario Figueroa v. United States, No. 16-CV-4469, 2020 WL 2192536, at *2 (S.D.N.Y. May 6, 2020); Vilar v. United States, No. 16-CV-5283, 2020 WL 85505, at *1 (S.D.N.Y. Jan. 3, 2020).

As reiterated by the Davis Court, courts apply a categorical approach to determine whether an offense is a crime of violence under the Elements Clause.  See United States v. Hill, 890 F.3d 51, 55 (2d Cir. 2018) (citing Taylor v. United States, 495 U.S. 575, 600 (1990)).  Under that approach, an offense is a crime of violence where the "minimum conduct necessary for a conviction of the predicate offense" involves violence.  See id. at 55-56; see also United States v. Culbert, 453 F. Supp. 3d 595, 597 (E.D.N.Y. 2020).  Courts "look only to the statutory definitions--i.e., the elements--of the offense," to resolve whether "such conduct amounts to a crime of violence under § 924(c)(3)(A)."  Hill, 890 F.3d at 55-56 (internal quotation marks and alterations omitted).

The categorical approach saves courts from determining the level of violence at issue on a case-by-case basis or from making the general inquiry into "the kind of conduct that the crime involves in the ordinary case."  Davis, 139 S. Ct. at 2326 (citing Dimaya, 138 S. Ct. at 1216).  A predicate crime will not support a conviction under the Elements Clause if there is "a realistic probability, not a theoretical possibility, that the statute at

issue could be applied to conduct that does not" constitute a crime of violence. Hill, 890 F.3d at 56 (internal quotation marks and citation omitted).

### 1. As to Counts Five and Eight

Petitioner contends that Hobbs Act robbery conspiracy cannot serve as the predicate offense for his Section 924(c) convictions for Count Five and Count Eight. While that is true, it is not conclusive here because Petitioner's convictions with respect to the Fish Robbery and the Trackside Robbery remain "crimes of violence"; hence, those robbery convictions remain valid predicates for his convictions on Counts Five and Eight.

Following his trial, the jury convicted Petitioner not only of Hobbs Acts robbery conspiracy for his participation in the Fish and Trackside Robberies, i.e., Counts Three and Six, respectively, but also convicted him of substantive Hobbs Act robbery for both those Robberies, i.e., Counts Four and Seven, respectively. The Second Circuit has held "that Hobbs Act robbery 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'" Hill, 890 F.3d at 60 (quoting 18 U.S.C. § 924(c)(3)(A)). Although Hill predates Davis, the Second Circuit has consistently reaffirmed Hill post-Davis. See United State v. Walker, 789 F. App'x 241, 245 (2d Cir. 2019) (holding that "[o]ur prior holding in United States v. Hill, that substantive Hobbs Act robbery is a crime of

violence under the elements clause of § 924(c)(3)(A), is unaffected by Davis, Stokeling, and Barrett and remains binding on us in this case" (internal citations omitted)); see also United States v. Biba, 788 F. App'x 70, 72 (2d Cir. 2019).  Moreover, where, as here, "a jury is instructed on both valid and invalid predicate offenses, the conviction stands if the verdict undoubtedly rests on a valid . . . predicate." United States v. Sessa, No. 20-CV-1957, 2020 WL 3451657. at *5 (E.D.N.Y. Jun. 24, 2020) (internal quotation marks omitted); see also United States v. Vasquez, 672 F. App'x 56, 61 (2d Cir. 2016) (holding that where a defendant's Section 924(c) conviction was predicated on a crime that is not a categorial crime of violence, the error was harmless because "there was no possibility that the jury's § 924(c) verdict rested only on [a potentially unlawful] predicate"); United States v. Walker, 789 F. App'x 241, 244–45 (2d Cir. 2019), cert. denied, 140 S. Ct. 979 (2020).

Because Petitioner was convicted of substantive Hobbs Act robbery for both the Fish and Trackside Robberies, Petitioner's corresponding Section 924(c) convictions on Counts Five and Eight are not affected by Davis.  Accordingly, Petitioner's claim for habeas relief on that basis fails.

### 2. As to Counts Fourteen and Seventeen

Petitioner claims that conspiracy to commit murder cannot serve as the predicate crime of violence for his Section

924(c) convictions under Counts Fourteen and Seventeen because, pursuant to Davis, conspiracy to commit murder no longer qualifies as a "crime of violence". (Support Memo at ECF p.11.)  This is so.  See United States v. Heyward, 3 F.4th 75, 78 (2d Cir. 2021) (holding conspiracy to commit murder does not qualify as a predicate crime supporting a Section 924(c) conviction); see also United States v. Erbo, No. 97-CR-1105, 2020 WL 6802946, *2 (S.D.N.Y. Nov. 19, 2020) ("Following Davis, a mere conspiracy to commit a crime of violence will ordinarily fail to qualify under Section 924(c)'s force[, i.e., elements,] clause." (citing United States v. Barrett, 937 F.3d 126, 127 (2d Cir. 2019), and Ianelli v. United States, 420 U.S. 770, 777 (1975))).  However, another offense may serve as a predicate if there is "legally sufficient proof that the crime was, in fact, committed."  Johnson v. United States, 779 F.3d 125, 129 (2d Cir. 2015) ("Every circuit court to have considered the issue has concluded that § 924(c) does not require the defendant to be convicted of (or even charged with) the predicate crime, so long as there is legally sufficient proof that the predicate crime was, in fact, committed." (collecting cases)); United States v. Rivera, 679 F. App'x 51, 55 (2d Cir. 2017) (summary order) (denying a petitioner's Johnson claim where the defendant's plea allocution provided sufficient proof for a predicate offense that was later dismissed at sentencing).

18

(a)   Regarding Count Fourteen

Conspiracy to commit murder and witness retaliation conspiracy were not the only predicate crimes for Petitioner's Count Fourteen Section 924(c) conviction.  There is no dispute Petitioner was also convicted of attempted murder (Count Ten), assault with a dangerous weapon (Count Eleven), and witness retaliation (Count Thirteen) in connection with the assault and attempted murder of Gardner.  Thus, while two of the predicate offenses for Petitioner's Count Fourteen Section 924(c) conviction were conspiracy counts, his three other convictions, i.e., Counts Ten, Eleven, and Thirteen, are unaffected by Davis and remain valid predicate offenses for the Count Fourteen conviction.  See States v. Medunjanin, No. 10-CR-0019, 2020 WL 5912323, at *5 (E.D.N.Y. Oct. 6, 2020); Abrue v. United States, No. 16-CV-5052, 2020 WL 4570338, at *4 (S.D.N.Y. Aug. 7, 2020).

To the extent Petitioner argues that it is not clear which predicate offense the jury relied upon in convicting him under Count Fourteen (see Support Memo at ECF p.11.), that argument is unavailing because "regardless of what theory of liability [he] was convicted under, he was convicted of . . . crime[s] of violence that unquestionably used a firearm."  Sessa, 2020 WL 3451657, at *6; see also id. at *5 ("A substantive conviction of a categorical crime of violence involving a firearm is a valid predicate for a

§ 924(c) conviction, regardless of what theory of liability it proceeds on." (citations omitted)).

    (b)  <u>Regarding Count Seventeen</u>

      As an initial matter, Petitioner is mistaken regarding his conviction on Count Seventeen; he was not charged or convicted with <u>conspiracy</u> to murder rival gang member Johnny Green. Rather, the predicate offenses supporting Petitioner's Count Seventeen Section 924(c) conviction were the attempted murder of Green in violation of 18 U.S.C. § 1959(a)(5) (Count Fifteen) and the assault of Green in violation of 18 U.S.C. § 1959(a)(3) (Count Sixteen) (<u>see, e.g.,</u> Opp'n at 28 n.18), both Counts upon which Petitioner was convicted. As such, Petitioner's Count Seventeen conviction is unaffected by <u>Davis</u>. See <u>Medunjanin</u>, 2020 WL 5912323, at *5 (attempted murder and assault with a deadly weapon are crimes of violence); <u>Abrue</u>, 2020 WL 4570338, at *4 (attempted murder is a crime of violence).

      In sum, Petitioner's Section 924(c) convictions under Counts Fourteen and Seventeen are not implicated by <u>Davis</u> because they were predicated upon substantive crimes of violence for which Petitioner was convicted, which convictions are more than legally sufficient proof that the crimes were, in fact, committed. Accordingly, Petitioner's reliance upon Counts Fourteen and Seventeen as grounds for granting habeas relief is unavailing.

### 3. As to Count Nineteen

Petitioner also contends that his Count Nineteen conviction for use of firearms during a drug trafficking crime is also void under Davis.  (See Support Memo at ECF p.11.)  Not so. The ruling in Davis does not extend to Section 924(c)'s definition of "drug trafficking crime."  Section 924(c) states in relevant part:

> For purposes of this subsection, the term "drug trafficking crime" means any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46.

18 U.S.C. § 924(c)(2).  Unlike the residual clause in Johnson and Dimaya, Section 924(c)'s definition of "drug trafficking crime" lacks a residual clause and is not unconstitutionally vague.  See, e.g., McCoy v. United States, Nos. 02-CR-1372, 16-CV-5226, 2017 WL 1291766, *1-2 (S.D.N.Y. Apr. 7, 2017).  Accordingly, Davis does not apply to Count Nineteen.  See, e.g., Matthews v. United States, No. 16-2212, slip order (D.E. 44), at 1-2 (2d Cir. Feb. 14, 2020) (holding Johnson and Davis do not affect Section 924(c) convictions predicated on a drug trafficking crime); Cooper v. United States, No. 16-1925, slip order (D.E. 40), at 1 (2d Cir. Feb. 20, 2019) ("Although Petitioner's Section 924(c) and (j) convictions were predicated on several crimes of violence, they also were predicated on drug trafficking crimes . . .," and, therefore, "[b]ecause

Petitioner's drug trafficking crimes were not affected by <u>Johnson</u> or <u>Dimaya</u>, his convictions under [Section] 924(c) and (j) remain valid." (citing <u>Harrington v. United States</u>, 689 F.3d 124, 137 (2d Cir. 2012))); <u>Fuller v. United States</u>, No. 16-1888, slip order (D.E. 51), at 1-2 (2d Cir. Feb. 20, 2019) (same); <u>In re Navarro</u>, 931 F.3d 1298, 1302 (11th Cir. 2019) (denying permission to file successive motion pursuant to 28 U.S.C. § 2255 raising a <u>Davis</u> challenge to a Section 924(c) conviction where the conviction was predicated both on a Hobbs Act robbery conspiracy and a narcotics offense); <u>Francis v. United States</u>, No. 16-CV-5046, 2016 WL 3881000, at *1 (S.D.N.Y. June 30, 2016) (summarily denying Section 2255 petition where defendant was sentenced under Section 924(c)'s "drug trafficking crime" prong instead of the "crime of violence" prong). Accordingly, Petitioner's claim with respect to his Count Nineteen conviction is without merit.

   C.   <u>The Ineffective Assistance of Defense Counsel Claim</u>

        For Petitioner to prevail on his ineffective assistance of counsel claims, he must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." <u>United States v. Cohen</u>, 427 F.3d 164, 167 (2d Cir. 2005) (quoting <u>Strickland v. Washington</u>, 466 U.S. 668, 688, 693 (1984)). When considering counsel's alleged errors,

22

the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  If a petitioner is able to establish an error of constitutional magnitude, he must next establish that he was prejudiced by counsel's performance, meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

> 1. As to the Failure to Allege a *Brady* Violation Claim

Petitioner claims that he is entitled to habeas relief because defense counsel was ineffective for failing to raise an argument that the Government committed a Brady violation. (Petition at 6.)  Petitioner alleges that the Government improperly withheld Smith's phone records from the day of the Gardner shooting.  (See id.)  He contends these records would have shown that the meeting at which Smith was ordered to shoot Gardner never transpired; in turn, that would have revealed that Smith testified falsely regarding his involvement in the shooting and would have exculpated Petitioner.  (See id.)  For the following reasons, Petitioner's Brady claim is meritless.

To establish a Brady violation, a defendant must demonstrate: (1) the evidence at issue is favorable to him because it is either exculpatory or impeaching; (2) the Government suppressed that evidence; and (3) the defendant was thereby

prejudiced.  See Strickler v. Greene, 527 U.S. 263, 281–82 (1999).
A habeas claim alleging a Brady violation should be denied on the
merits where a petitioner is unable to demonstrate the exculpatory
nature of the evidence at issue.  See Jones v. Conway, 442 F. Supp.
2d 113, 128 (S.D.N.Y. 2006).   Additionally, "[u]ndisclosed
evidence is material only if there is a reasonable probability
that, had the evidence been disclosed to the defense, the result
of the proceeding would have been different."  United States v.
Payne, 63 F.3d 1200, 1209 (2d Cir. 1995) (quoting Bagley, 473 U.S.
at 682)).

        Here, Petitioner is unable to show that the Government
violated its Brady obligation as he merely puts forth conclusory
assertions and speculations about what the purported Smith phone
records would have shown, failing to present actual phone records.
That is not surprising.

> The [G]overnment . . . never was[] in
> possession of any phone records for Denzel
> Smith for the time surrounding the shooting of
> Gardner.   Indeed, Smith was never able to
> provide law enforcement with his cell phone
> number from the time of the Gardner shooting.
> . . .  Smith testified that Derick Hernandez
> instructed him to get rid of his phone number
> in the days after the shooting, and Smith
> complied with this directive.

(Opp'n at 12-13 (footnote omitted).)   Hence, as the Government
aptly argues, "Because the [G]overnment did not possess Smith's
[phone] records, and therefore could not have suppressed said

records, [Petitioner] fails to establish a <u>Brady</u> violation." (<u>Id.</u> at 12.)

In turn, Petitioner cannot demonstrate that defense counsel was deficient for failing to allege a <u>Brady</u> violation where there was no basis to do so. Further, Petitioner has not shown that he was prejudiced by defense counsel's failure to raise a <u>Brady</u> challenge because he has not shown the outcome of the trial would have been different, but for the <u>Brady</u> violation not having been made.

Accordingly, Petitioner's ineffective assistance claim based on his <u>Brady</u> argument is unavailing.

### 2. As to the Failure to Cross-Examine Colby Claim

Petitioner contends that defense counsel was ineffective for failing to effectively cross-examine Colby, thereby allowing false testimony to go uncorrected. (<u>See</u> Petition at ECF p.13; Support Memo at ECF p.3.) He alleges that Colby gave false testimony that Petitioner was the shooter in Gardner's attempted murder. (<u>Id.</u> at ECF p.13.) Petitioner's claim fails as it is belied by the record, which shows (a) defense counsel questioned Colby about Petitioner not being the shooter in the Gardner attempted murder, and (b) Colby testified that Gardner wrongly identified Petitioner as the shooter. (Tr. 2440:19-2443:2.) Counsel even informed the Court that his intention and strategy behind this line of questioning was to establish that Colby was

biased against Petitioner, a defense theory counsel pursued at Petitioner's request.  (Tr. 2437:5-2438:5.)  As defense counsel pursued this line of questioning at Petitioner's behest, Petitioner is unable to demonstrate counsel's assistance fell outside the wide range of reasonable professional assistance. Accordingly, Petitioner's ineffective assistance claim on this basis is denied.

          3. As to the Failure to Cross-Examine Biddiscombe Claim

          Petitioner further claims that counsel was ineffective for failing to adequately cross-examine Biddiscombe regarding controlled purchases of illegal firearms, which failure purportedly enabled Biddiscombe to commit perjury.  (See Petition at ECF p.13.)  Petitioner's claim fails.

          Petitioner contends that Biddiscombe falsely testified that Gardner was the first cooperator he worked with and offers that Biddiscombe actually worked with another cooperator in 2011 regarding a previous controlled firearm sale.  (See Petition at ECF p.13.)  He asserts that defense counsel was deficient for allowing Biddiscombe's perjury to stand.  This claim is also refuted by the record.

          During Biddiscombe's cross-examination, defense counsel specifically inquired about working with another cooperator in 2011.  (Tr. 206:13-21.)  Although Biddiscombe testified not recalling the details of the controlled firearm sale with the other

cooperator, he did testify that Petitioner was not present for that prior controlled firearm sale. (Tr. 206:18-207:10.) Because defense counsel clearly questioned Biddiscombe regarding the prior transaction involving the other cooperator, i.e., the very line of questioning Petitioner alleges counsel failed to make, Petitioner's claim is baseless; it certainly does not demonstrate that defense counsel's performance in this regard was deficient.

Accordingly, Petitioner's ineffective assistance claim cannot be established on this ground.

### 4. As to the Failure to Call Witnesses Claim

Petitioner asserts that counsel was ineffective for failing to call Mitchell as a defense witness. He also argues that counsel failed to raise "the relevant issues why Detective John Mitchell should be called as a witness." (Support Memo at ECF p.4.)

At trial, after the Government rested, defense counsel informed the Court that he intended to call the Detectives as defense witnesses, proffering that the subject matter of the Detectives' testimonies would include a wiretap application, and the investigation related to the phone call analysis and cell phone tower records.[5] (Tr. 2555:3-5, 2557:7-13, 2560:7-13.) Petitioner

---

[5]  The Government argued that no such cell phone records or cell tower information had been admitted into evidence, and whether there had been any cell phone analysis had not been introduced; therefore, such questioning would be irrelevant. (Tr. 2557:14-

also spoke to the Court directly, arguing Mitchell falsified his wiretap affidavit.  (Tr. 2561:6-21.)  The Court rejected defense counsel's application to call the Detectives having already granted the wiretap application prior to trial based on probable cause.  (Tr. 2568:18-22.)  Petitioner further submits that Mitchell should have been called as a witness to testify about Gary Mosley ("Mosley"), who at the time of the trial was a cooperating witness and who Petitioner contends was the person who ordered the hit on Gardner.  (See Petition at ECF p.14; Opp'n at 15.)

Petitioner raised the crux of this claim on direct appeal, arguing this Court erred by precluding him from calling the Detectives as defense witnesses.  See Osborne, 739 F. App'x at 12.  The Second Circuit rejected this claim, holding this Court acted within its discretion, i.e., that after thoroughly exploring Petitioner's reasons for calling the Detectives, this Court appropriately found that relitigating the wiretap affidavit was an impermissible purpose to do so.  Id. at 17.  Although Petitioner now raises the same claim, albeit cast as an ineffective assistance of counsel claim, the "so-called mandate rule bars re-litigation of issues already decided on direct appeal."  Yick Man Mui v. United States, 614 F.3d 50, 53 (2010) (citing Burrell v. United

---

21.)  Moreover, as discussed herein, the Government maintains it never was in possession of any such phone records.  (See Opp'n at 12-13.)

States, 467 U.S. 160, 165 (2d Cir. 2006)) (relying upon the mandate rule to bar ineffective assistance of counsel claims raised in habeas petitions where the factual predicates of those claims were resolved on direct appeal).[6]

Accordingly, Petitioner's claim that counsel was ineffective for failing to call the Detectives Mitchell as a defense witness is rejected as barred.

D.   The Ineffective Assistance of Appellate Counsel Claim

Petitioner contends that appellate counsel was ineffective for failing to raise on appeal a claim that the Government committed a Brady violation.  Petitioner's claim fails.

---

[6]   In support of his claim, Petitioner also states that defense counsel promised him that he could not be convicted of ordering the hit on Gardner because Mosley was charged with that conduct, and further promised that phone call recordings of Mosley ordering the hits would be played at trial.  (Support Memo at ECF p.15.) Defense counsel, John F. Carman, Esq. ("Carman"), declares he never promised Petitioner that he could not be convicted of ordering the hit on Gardner. (Carman Decl., ECF No. 665-1, ¶4.)  Carman avers that he "regularly counseled [Petitioner] on the risks of proceeding to trial and the possibility that he could be convicted of any or all of the crimes charged in the indictment against him." (Id.)  To the extent Petitioner argues that counsel was ineffective based on this claimed promise, the Court rejects his claim.  See Chung Yu-Holguin v. United States, No. 13-CR-0259, 2020 WL 804945, at *13-14 (E.D.N.Y. Feb. 18, 2020) ("Conclusory assertions like [Petitioner's], without detail or supporting documentation, have been found inadequate to support a claim of ineffective assistance in the face of a credible and contradictory affidavit by counsel" (collecting cases)), certificate of appealability denied sub nom. Yu-Holguin v. United States, No. 20-961, 2020 WL 8918594 (2d Cir. Oct. 13, 2020).

The Strickland standard also applies to claims of ineffective assistance of appellate counsel. See Smith v. Murray, 477 U.S. 527, 536, (1986); Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992) ("Although Strickland addressed the constitutional standard for ineffective assistance of counsel in the trial counsel context, our Circuit has also adopted the Strickland two-prong test in assessing the effectiveness of appellate counsel."). "[I]t is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous argument that could be made." Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) (citing Jones v. Barnes, 463 U.S. 745, 754 (1983)). However, a petitioner may demonstrate ineffective assistance by demonstrating that "[appellate] counsel omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Id. at 533.

As discussed herein, Petitioner raised the same Brady claim with respect to defense counsel. Again, Petitioner alleges that the Government wrongfully suppressed Smith's phone records which, he contends, would have demonstrated his innocence with respect to the Gardner shooting. For the same reasons previously articulated, Petitioner's claim against appellate counsel similarly has no merit. The Government states that it does not, and has never, been in possession of Smith's phone records from

the subject timeframe. (See Opp'n at 12-13.) As such, Petitioner's claim is based solely on speculation and conclusory assertions of what he purports the records would have shown. Accordingly, Petitioner cannot demonstrate that the Government violated its Brady obligations, nor can he demonstrate that appellate counsel's representation constituted deficient performance or prejudiced him for failing to raise a baseless claim on appeal.

Thus, Petitioner's claim of ineffective assistance by appellate counsel does not warrant granting habeas relief.

**\*\*\***

To the extent not explicitly addressed herein, the Court has considered Petitioner's new arguments (see Petitioner's May 8, 2022 Letter, ECF No. 732 (proffering Borden v. United States, 141 S. Ct. 1817 (2021) in further support of his Petition)), and finds them to be without merit.

CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Petitioner's Petition (ECF No. 603) is **DENIED** in its entirety;

**IT IS FURTHER ORDERED** that, because there can be no debate among reasonable jurists that Petitioner was not entitled to habeas relief, the Court does not issue a Certificate of Appealability, see 28 U.S.C. § 2253(c); see also Middleton v.

Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005); and, (2) certifies that any appeal of this Order would not be taken in good faith, and thus his in forma pauperis status is denied for the purposes of any appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962); and

        **IT IS FURTHER ORDERED** that the Clerk of the Court: (1) mark CLOSED the corresponding civil case, Case No. 19-CV-6919; and (2) mail a copy of this Memorandum and Order to the pro se litigant at his address of record, including the notation "LEGAL MAIL" on the mailing envelope.

<b>SO ORDERED.</b>

                               /s/ JOANNA SEYBERT
                               Joanna Seybert, U.S.D.J.

Dated:  May _26_, 2022
        Central Islip, New York