UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,

                                        MEMORANDUM AND ORDER
            -against-                   14-CR-0264(JS)

RAPHAEL OSBORNE,
                    Defendant.
----------------------------------X

APPEARANCES
For the Government: Michael R. Maffei, Esq.
                    United States Attorney's Office
                    Eastern District of New York
                    610 Federal Plaza
                    Central Islip, New York  11722

For the Defendant:  Raphael Osborne, Pro Se
                    83520-053
                    USP Pollock
                    U.S. PENITENTIARY
                    P.O. Box 2099
                    Pollock, Louisiana  71467


SEYBERT, District Judge:

        Currently before the Court is the pro se motion of

Defendant Raphael Osborne ("Defendant" or "Osborne") seeking a

sentence reduction pursuant to the First Step Act (the "FSA", the

"Act" or the "First Step Act"), 18 U.S.C. § 3582(c)(1)(A)

(hereafter, the "Motion"[1]).[2]  (See ECF No. 824; see also Reply,

---

[1]  Herein, the Court will cite to the internal page numbers of
Defendant's Motion.

[2]  To the extent Defendant's Motion, the Government's Opposition
or this decision uses the terminology "compassionate release", the
Court notes that phrase is not contained in the First Step Act;
rather it is one coined by the courts to characterize a reduction

ECF No. 854.[3])    The Government opposes the Motion.    (See Opp'n, ECF No. 848.)    For the following reasons, the Motion is **DENIED** without prejudice.

### BACKGROUND

#### I.    Relevant Factual and Procedural Background

The Court presumes the parties' familiarity with the facts of this case, which are provided in its May 26, 2022 Memorandum & Order denying Defendant's motion to vacate brought pursuant to the habeas statute, 28 U.S.C. § 2255 (hereafter, the "Section 2255 Habeas Motion").  See Osborne v. United States, No. 14-CR-0264, 2022 WL 1693668, at *1-3 (E.D.N.Y. May 26, 2022) (hereafter, the "Section 2255 M&O")[4] (providing general background information on Rollin' 60s Crips set); see also, e.g., United States v. Hernandez, No. 14-CR-0264, 2026 WL 111639, at *1 (E.D.N.Y. Jan. 14, 2026) (in denying co-defendant's compassionate release motion, providing general background regarding Rollin' 60s Crips set and the illegal activities of its members); United States

---

in sentence pursuant to said Act.  See, e.g., United States v. Shakur, 498 F. Supp. 3d 490, 492 (S.D.N.Y. 2020); see also United States Brooker, 976 F.3d 228, 237 (2d Cir. 2020) (stating the phrase "compassionate release is a misnomer" as the First Step Act "in fact speaks of sentence reductions").

[3]  Because the Reply does not contain internal page numbers, the Court will cite to the page numbers generated by its Electronic Case Filing ("ECF") system.

[4]  The Section 2255 M&O is also located in the Case Docket at ECF No. 733.

v. Lake, No. 14-CR-0264, 2023 WL 8810620, at \*1 (E.D.N.Y. Dec. 20, 2023) (same).   For context, the Court summarily states the following.[5]

Defendant was a leader of the Roosevelt, New York "set" of the Rollin' 60s Crips, a nationwide street gang with members on Long Island, New York (hereafter, the "Gang").   (See PSR ¶¶44, 56.) Beginning in 2003 and running through at least July 2013,

> [t]he Gang trafficked narcotics and firearms throughout Long Island and carried out a campaign of violence, including murders, attempted murders, and assaults against members of the rival Bloods street gang.   In October 2012, suspecting a fellow Gang member, Maurice Gardner ("Gardner"), was cooperating with law enforcement officials, Defendant [and others] participated in planning the killing of Garnder.   [Part of the plan included] luring Garnder out of his house so another Gang member could shoot Gardner.   The plan was partially successful; Gardner was shot several times, but not killed.   Instead, Gardner was left paralyzed from the waist down.

Hernandez, 2026 WL 111639, at \*1; (see also, e.g., PSR ¶¶41, 44-47).   Defendant was also instrumental in other murders and attempted murders.   (See PSR ¶¶51-52, 57-62, 65-66.)

Defendant was originally indicted in May 2014, with the Government bringing a charge of conspiracy to distribute controlled substances against Defendant.   (See Indictment, ECF

---

[5]  The Court further draws from Osborne's Presentence Investigation Report (PSR") (see ECF No. 342) (sealed)) in providing its summary background.

No. 1.)   The Indictment was subsequently superseded, with the Government asserting 21 criminal counts against Defendant; ultimately, the Government brought various charges including: racketeering and VICAR[6] offenses; conspiracy to murder and attempted murder charges; weapons possession charges; and narcotics and firearm trafficking charges.   (See Superseding Indictment, ECF No. 226).   After a month-long trial, on April 11, 2016, a jury returned a verdict finding Defendant guilty of all 21 counts.   (See Verdict Sheet, ECF No. 266.)   On January 13, 2017, this Court sentenced Defendant to an aggregate term of imprisonment of three consecutive life terms plus 135 years.   (See Judgment, ECF No. 414.)

As aptly summarized by the Government, subsequently:

Osborne appealed his conviction, challenging: (1) the sufficiency of the evidence underlying his conviction; (2) the district court's denial of his Batson challenge; (3) the applicability of the Pinkerton theory of liability; (4) the district court's denial of his pre-trial Franks motion; (5) the district court's ruling precluding the defendant from calling, inter alia, detective John Mitchell as a witness at trial; (6) the admission of certain testimony from a cooperating witness; (7) the admission of certain photographs; and (8) that the sentence of the district court was substantively unreasonable.   The Second Circuit issued a summary order rejecting all of the defendant's arguments and affirming the

---

[6]   "'VICAR' is an acronym for 'Violent Crimes in Aid of Racketeering'."   Section 2255 M&O, 2022 WL 1693668, at *2 n.2.

4

> judgment.  See Second Circuit Mandate, ECF Doc. No. 556.[7]
> On December 5, 2019, Osborne, proceeding pro se, filed a motion pursuant to 28 U.S.C. § 2255 seeking to vacate his conviction.  In this petition, Osborne raised seven claims which he alleged required vacatur of his conviction.  In the petition, five claims were related to ineffective assistance of counsel, one claim alleged "newly discovered evidence," and the final claim alleged pursuant to United States v. Davis, 139 S. Ct. 2319 (2019), [was] that his convictions for Section 924(c) must be dismissed as they relied on a no longer valid predicate crime of violence.  This Court denied the petition in its entirety, and did not issue a Certificate of Appealability pursuant to 28 U.S.C. § 2253(c).  See Memorandum and Order, ECF Doc. No. 733.[8]

(Opp'n at 2.)

Defendant is currently 40-years-old and is serving his sentence at the high security U.S. Penitentiary located in Pollock, Louisiana; because he is sentenced to life, he has no anticipated release date.  See Fed. Bureau of Prisons ("BOP"): Find an Inmate, Raphael Osborne (BOP Reg. No. 83520-530), https://www.bop.gov/inmateloc/ (last visited Feb. 19, 2026) (identifying Defendant's location as "Pollock USP").  He now moves for a sentence reduction to time served or a sentence modification such that he be placed on home confinement.  (See Reply at 6; Motion at 1, 12-13.)

---

[7]  Also available at: United States v. Osborne, 739 F. App'x 11 (2d Cir. June 25, 2018) (summary order).

[8]  I.e., the Section 2255 M&O, 2022 WL 1693668.

II.  The Instant Motion

Defendant filed the instant Motion on March 3, 2025.[9] The Motion does not address the issue of exhaustion.  Instead, Defendant proceeds to raise four arguments he believes entitle him to a reduced sentence: (1) supposed changes in the law which should affect his sentence (see Motion at 3-5); (2) purported ineffective assistance of counsel (see id. at 6-9); (3) having suffered childhood trauma (see id. at 9-11); and (4) his rehabilitation (see id. at 11-12).  Defendant further proffers a release plan if his Motion is granted.  (See id. at 12.)  Finally, as to the Section 3553(a) sentencing factors, Defendant simply states, "consideration of those factors supports a finding that he has already served sufficient time to satisfy the purposes of sentencing . . . ."  (Id.)

Unsurprisingly, the Government opposes Defendant's Motion.  (See Opp'n.)  First, it raises an exhaustion defense, asserting Defendant has not presented any evidence showing exhaustion or even an attempt at exhaustion.  (See id. at 9.) Next, the Government maintains Defendant has not established any of the extraordinary or compelling circumstances as delineated by

---

[9]  While dated February 26, 2025 (see Motion at 13), the Motion was mailed February 27, 2025 (see mailing Envelope, ECF No. 824 at ECF p.14), and received by and filed with the Court on March 3, 2025 (see Motion at 1 (stamped "REC'D" on "MAR 3 '25" and "FILED" on "MAR 03 2025")).

the Sentencing Commission in its applicable Policy Statement § 1B1.13. (See id. at 9-11.) It further argues: "Since [D]efendant is unable to meet his burden of establishing one of the six circumstances defined in [Policy Statement §] 1B1.13, he is unable to use rehabilitation as an extraordinary and compelling circumstance warranting a reduction in sentence." (Id. at 11.)

Finally, the Government contends consideration of the Section 3553(a) sentencing factors counsels against a sentence reduction in this instance. (See id. at 11-13.) It highlights the extreme seriousness of Defendant's crime and underscores Defendant "has not demonstrated any remorse for the destruction left in his path" and "does not convey any guilt in his [M]otion" or "accept any responsibility for his repulsive actions". (Id. at 12.) Continuing, the Government maintains keeping the current sentence in place is necessary to send a message to gang members and other violent criminals that their violent criminal behavior will not be tolerated. (See id. at 13.) Moreover, "[t]he significant sentence imposed communicates to the public that the criminal justice system will protect them, and that the guilty will be punished." (Id.) Relatedly, Defendant's instant sentence remains necessary as a specific deterrence. (See id.) At bottom, even if, arguendo, Defendant was able to establish an extraordinary circumstance, it would not outweigh consideration of the Section 3553(a) sentencing factors. (See id.)

7

In reply, Defendant states he had requested compassionate release from the warden of his facility, which claim Defendant did not substantiate with any evidence. (See Reply at 1.) He then appears to raise a new argument in support of his requested sentence reduction, to wit, his purported youthfulness during his crime spree. (See id. at 2-3.) Defendant further puts forth an "Amended Statement of Facts", delineating 13 items which are, in essence, issues challenging his underlying conviction. (See id. at 3-6.) For example, Defendant makes claims of: fabricated evidence and prosecutorial misconduct; Brady violations; improper coaching of witnesses; trial perjury by law enforcement witnesses; improper photo identifications; and, suppression of exculpatory evidence. (See id.) Additionally, Defendant filed affidavits from Maurice Gardner, a victim of attempted murder by Gang members, and co-defendant and fellow Gang member Cody Hernandez (hereafter, collectively, the "Affidavits"). (See Gardner Aff., ECF No. 858; Hernandez Aff., ECF No. 865.) Defendant assets Gardner's Affidavit "proves Mr. Osborne's innocence." (Reply at 6.)

In a permitted sur-reply, the Government addressed the Affidavits. (See Sur-Reply, ECF No. 875.) It characterizes Defendant's reliance on the Affidavits as an "attempt to buttress [his] claim that he was wrongfully convicted of certain 'fabricated' crimes." (Id. at 1.) However, the Government asserts

8

"the Garner Affidavit does not raise new facts and merely rehashes old claims" and "[t]he Hernandez Affidavit does nothing more than attempt to rebut facts overwhelmingly established at trial." (Id.) The Government extensively details why each Affidavit is unavailing and, at bottom, maintains said Affidavits "do not provide any information that supports Osborne's contention that he was convicted of 'fabricated' crimes.". (Id. at 4; see also id. at 1-4 (detailing reasons why Affidavits are unpersuasive).)

In a permitted sur-sur-reply, Defendant regurgitates his belief that the Affidavits proves he was improperly convicted "through constitutional violations and prosecutorial misconduct." (Sur-Sur-Reply, ECF No. 885, at 1.) According to Defendant, the Affidavits "present new, material evidence of fabrication, conspiracy, and suppression of truth" and "demonstrate that [his] conviction was the product of deliberate misconduct and fraud upon the Court." (Id. at 2.) Thus, Defendant requests his Motion for a sentence reduction be granted and his sentence be modified "to a full exoneration in the interest of justice." (Id.)

## DISCUSSION

I.   Applicable Law

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." United States v. Rabuffo, No. 16-CR-0148, 2020 WL 2523053, at *1 (E.D.N.Y. May 14, 2020) (quoting United States v. Gotti, 433 F. Supp. 3d 613, 614

9

(S.D.N.Y. 2020)).  The FSA, which modified 18 U.S.C. § 3582(c), allows a court to modify a defendant's sentence upon a motion of either (i) the Director of the BOP, or (ii) the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); see also United States v. Thrower, 495 F. Supp. 3d 132, 137 (E.D.N.Y. 2020).  "The statute imposes three independent, necessary requirements for release: exhaustion of remedies, existence of an extraordinary and compelling reason for sentence reduction, and that the § 3553(a) [F]actors warrant reduction."  United States v. Hunter, No. 21-1773, 2022 WL 2288688, at *1 (2d Cir. June 24, 2022) (citing United States v. Keitt, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam)); United States v. Rodriguez, 147 F.4th 217, 222 (2d Cir. 2025) (same).  "A defendant's failure to exhaust administrative remedies is a threshold matter preventing the [c]ourt from considering a Section 3582 application[, i.e., a compassionate release motion]."  United States v. Robinson, No. 10-CR-0789, 2022 WL 16924176, at *3 (E.D.N.Y. Nov. 14, 2022) (quoting United States v. Alvarez, No. 89-CR-0229, 2020 WL 4904586, at *2 (E.D.N.Y. Aug. 20, 2020)).  And, "[i]f any one requirement is not satisfied, the district court may deny the motion without considering the remaining requirements."

10

Hunter, 2022 WL 2288688, at *1 (citing Keitt, 21 F.4th at 72–73); see also, e.g., United States v. Pimentel, No. 23-7096-CR, 2025 WL 783730, *2 (2d Cir. Mar. 12, 2025) (summary order) (affirming district court's denial of compassionate release where lower court's denial was based solely on applying Section 3553(a) Factors, which it found did not warrant consideration of proffered extraordinary and compelling reasons; quoting Keitt).

Where exhaustion is satisfied, in their consideration of motions brought pursuant to the FSA, courts are to consider whether a sentence "reduction is consistent with applicable policy statements issued by the Sentencing Commission", 18 U.S.C. § 3582(c)(1)(A); see also U.S.S.G. § 1B1.13 ("Policy Statement § 1B1.13"), and whether the relevant Section 3553(a) Factors favor such a reduction.  See United States v. Donato, No. 95-CR-0223, 2024 WL 1513646, *5 (E.D.N.Y. Apr. 18, 2024);[10] see also Keitt, 21

---

[10]  In Donato, Judge Azrack of this District explained:

> In 2020, the Second Circuit determined that the applicable policy statement—U.S.S.G. § 1B1.13—does not apply to motions for compassionate release filed by defendants because the statement's language referenced only motions filed by the Director of the Bureau of Prisons.  See United States v. Brooker, 976 F.3d 228, 235–37 (2d Cir. 2020). [T]he Sentencing Commission has since amended the policy statement, such that it now explicitly covers motions for compassionate release brought by individual defendants.  See U.S.S.G. § 1B1.13(a) ("Upon motion of the Director of the Bureau of Prisons or the defendant, . . . the court may reduce a term

of imprisonment . . . .") (emphasis added). As a result, courts in this circuit have determined that "Brooker does not apply to the new version of Policy Statement 1B1.13 . . . . [and that] to grant a motion for compassionate release, a court must now . . . find that granting such relief is consistent with Policy Statement 1B1.13." United States v. Feliz, [No. 16-CR-0809,] 2023 WL 8275897, at *4 (S.D.N.Y. Nov. 30, 2023) (quotation marks omitted); see also United States v. Andrews, [No. 01-CR-0450,] 2023 WL 8477993, at **2–5 (S.D.N.Y. Dec. 7, 2023) (analyzing the recent amendments to Policy Statement 1B1.13 and applying it to a defendant's motion for compassionate release). Accordingly, the amended guidance from the Commission as to what constitutes extraordinary and compelling reasons now controls the analysis of a compassionate release petition, however initiated. See generally U.S. Sent'g Comm'n, Amendments to the Sentencing Guidelines, 88 Fed. Reg. 28,254 (effective Nov. 1, 2023); see also United States v. Lopez, [No. 16-CR-0317,] 2024 WL 964593, at *2 (S.D.N.Y. Mar. 5, 2024.)

Donato, 2024 WL 1513646, at n.10; see also Feliz, 2023 WL 8275897, at *1 (stating recent amendments, "which updated Section 1B1.13 of the U.S. Sentencing Guidelines Manual to harmonize the provision with the First Step Act of 2018, have changed the legal framework promulgated by the Second Circuit in United States v. Brooker, 976 F.3d 228 (2020)"), and at *4 ("Brooker does not apply to the new version of Policy Statement 1B1.13 because the Policy Statement, as amended, is now applicable to compassionate release motions brought in court by defendants. . . . Accordingly, to grant a motion for compassionate release, a court must now, in addition to finding that the other elements of the compassionate release standard are satisfied, . . . also find that granting such relief is consistent with Policy Statement 1B1.13, which sets forth the circumstances under which an extraordinary and compelling reason for compassionate release or sentence reduction would exist." (internal quotation marks omitted)); United States v. Torres-Teyer, No. 01-CR-0021, 2025 WL 2776048, at * 3 (S.D.N.Y. Sept. 30, 2025) (stating a "defendant must show [] extraordinary and compelling reasons that, consistent with Policy Statement 1B1.13, warrant a sentence reduction . . . . " (citing Feliz, 2023 WL 8275897, at *2-4 & n.3; further citation omitted)).

F.4th at 71. However, "'[r]ehabilitation . . . alone shall not be considered an extraordinary and compelling reason.'" United States v. Brooker, 976 F.3d 228, 235–37 (2d Cir. 2020) (emphasis and alteration in original) (quoting 28 U.S.C. § 994(t)); see also U.S.S.G. § 1B1.13(d). Even where extraordinary and compelling reasons exist, the Court must "consider all the Section 3553(a) [F]actors to the extent they are applicable, and may deny such a motion if, in its discretion, compassionate release is not warranted because Section 3553(a) [F]actors override, in any particular case, what would otherwise be extraordinary and compelling circumstances." United States v. Davies, No. 17-CR-0057, 2020 WL 2307650, at *2 (E.D.N.Y. May 8, 2020) (citation omitted); see also Pimentel, 2025 WL 783730, at *2; United States v. Jones, No. 22-2008-CR, 2023 WL 8613867, at *2 (2d Cir. Dec. 13, 2023) (same). "[A] statement that the district court has considered the statutory factors is sufficient." United States v. Torres, No. 21-2511-CR, 2022 WL 17087048, at *3 (2d Cir. Nov. 21, 2022) (summary order) (quoting United States v. Gammarano, 321 F.3d 311, 315-16 (2d Cir. 2003)).

"The defendant bears the burden of showing that the circumstances warrant a sentence reduction." United States v. Sellick, No. 21-2328, 2022 WL 16936829, at *1 (2d Cir. Nov. 15, 2022) (summary order) (citing United States v. Jones, 17 F.4th 371, 375 (2d Cir. 2021)); see also United States v.

13

Friedlander, No. 20-CR-0441, 2022 WL 2305370, at *3 (E.D.N.Y. June 24, 2022) ("A defendant 'bears the burden of showing that his release is justified.'" (quoting United States v. Patterson, No. 06-CR-0080, 2020 WL 3451542, at *1 (S.D.N.Y. June 23, 2020)). "A district court's discretion in deciding a compassionate release motion—as in all sentencing matters—is broad." Rodriguez, 147 F.4th at 222 (quoting Brooker, 976 F.3d at 237) (citation modified).

## II. Application

### A. Exhaustion

Defendant did not address his exhaustion duty in his Motion; nor was there any indication he had requested compassionate release from the warden of his facility before bringing this Motion. (See Motion, in toto.) In its Opposition, the Government highlights Defendant's failure to first seek relief from the warden, as required. (See Opp'n at 8-9.) Thus, it argues Defendant "has not met his burden of demonstrating that the exhaustion requirement was met." (Id. at 9.) In reply, Defendant baldly contends he has satisfied his exhaustion requirement:

> by submitting his BP8 for a reduction in sentence to the Warden. Due to the facility being on almost constant lockdown, Mr. Osborne handed a guard the paperwork to submit on February 2, 2025. Having heard no response, which is the norm for these requests at his facility, the 30 days lapsed.

14

(Reply at 1; see also id. at 2.)  Of significance, Defendant did not provide the Court with a copy of said "BP8" compassionate release request.

The First Step Act's exhaustion requirement is a claim-processing rule that may be waived or forfeited by the Government; however, a district court may not excuse a defendant's failure to comply with the statute's mandatory exhaustion requirement if the Government properly invokes it.  See United States v. Saladino, 7 F.4th 120, 121-24 (2d Cir. 2021) (per curium); see also United States v. Sessum, No. 15-CR-0667, 2023 WL 3319424, at *3 (S.D.N.Y. May 9, 2023) (quoting United States v. Diaz, No. 90-CR-0861, 2022 WL 17090613, at *2 (S.D.N.Y. Nov. 21, compassionate 2022) (further citation omitted)).  Moreover, "a defendant seeking release should include evidence of compliance with the First Step Act's mandatory administrative exhaustion requirement," such as documentation of the request submitted with the compassionate release motion.  Friedlander, 2022 WL 2305370, at *3 (quoting United States v. Daley, No. 89-CR-0229, 2021 WL 327620, at *1 (E.D.N.Y. Feb. 1, 2021); internal quotation marks omitted).  Indeed, "courts in this Circuit have held that a defendant's statement attesting to exhaustion, on its own, is insufficient to satisfy this requirement."  United States v. Johnson, 671 F. Supp. 3d 265, 271 (E.D.N.Y. 2023); see also id. at n.6 (collecting cases).

15

Here, in the absence of any evidence supporting his claim, Defendant has failed to meet his burden of establishing exhaustion of his administrative remedies. Contra Hernandez, 2026 WL 111639, at *4 (finding sufficient defendant's providing copy of compassionate release request to warden, even though unclear warden received same, to establish administrative exhaustion); United States v. Cabral, No. 12-CR-0336, 2025 WL 3628402, at *4 (E.D.N.Y. Dec. 13, 2025) (finding defendant satisfied his exhaustion burden where he provided copy of his "Inmate Request" even though there was "no indication in the record as to the warden's response"); United States v. Gamble, No. 18-CR-0606, 2025 WL 3089386, at *4 (E.D.N.Y. Nov. 4, 2025) (finding defendant satisfied exhaustion requirement where he "include[d] as an exhibit his request for compassionate release made to the warden, which the warden denied" and which denial defendant also included with compassionate release motion). Rather, since there is no supporting evidence Defendant exhausted his administrative remedy and the Government has raised an exhaustion defense, i.e., it has not waived any objection based upon exhaustion, the Court is precluded from excusing Defendant's non-compliance with meeting that requirement. See, e.g., United States v. J. Cabral, No. 12-CR-0336, text ORDER (E.D.N.Y. Nov. 7, 2025) (where defendant offered no evidence of having exhausted administrative remedies, denying compassionate release motion on that basis alone). Hence,

16

in the absence of any evidence showing compliance with the First Step Act's exhaustion requirement, Defendant's Motion is DENIED without prejudice.  See Friedlander, 2022 WL 2305370, at *3; see also Hunter, 2022 WL 2288688, at *1 (instructing "[i]f any one requirement is not satisfied, the district court may deny the motion without considering the remaining requirements" (citing Keitt, 21 F.4th at 72-73)).

B. The Mertis of Defendant's Compassionate Release Motion

Because Defendant has failed to establish exhaustion under the First Step Act, the Court need not consider the merits of his Motion.  See Keitt, 21 F.4th at 73.  However, even if the Court were to proceed to the merits of Defendant's request, relief would not be granted.

1. Extraordinary and Compelling Circumstances

Defendant has not presented any extraordinary and compelling reason for his early release.  Rather, having carefully considered Defendant's submissions and extensively reviewed the record, the Court agrees with the Government that "[h]ere, the [D]efendant fails to provide any legitimate 'extraordinary and compelling reasons' for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i)."  (Opp'n at 7; see also id. at 10-11 (explaining why none of grounds advanced by Defendant satisfy any of the six circumstances outlines in Policy Statement § 1.1B13 that may qualify as an extraordinary and compelling reason).)  The Court

17

proceeds to explain its rationale for rejecting each of Defendant's arguments.

### a.    Changes in the Law

Defendant's reliance upon changes in the law are unavailing.   First, the Court already rejected Defendant's Davis-based argument in its Section 2255 M&O.  See 2022 WL 1693668, at *5-8.  Defendant has not now presented any argument warranting this Court reconsider its determination regarding the interplay of Davis and the sentence Defendant received.   (See Motion at 4.) Second, as to his Borden-based arguments, the Court also already found them to be without merit.  See Section 2255 M&O, 2022 WL 1693668, at 12.  And, once more, here, Defendant has not advanced a persuasive basis for the Court to review that prior finding. (See Motion at 5.)   Further, as to his Wooden-based arguments, Defendant's reliance upon that case is wholly misplaced.   (See id.); see also Wooden v. United States, 595 U.S. 360 (2022).   In Wooden, the Supreme Court clarified its earlier ruling made in Petty v. United States, 481 U.S. 1034 (1987), addressing the meaning of the "occasion" clause in the Armed Career Criminal Act. See Wooden, 595 U.S. at 371-76 (discussing the Petty case). Therefore, the Wooden case is not a new substantive criminal ruling to be applied retroactively here.  But, of more relevance to the instant case, Defendant was not convicted as a career criminal.

18

(See PSR; Judgment; Statement of Reasons.)  Hence, Wooden is of no effect to Defendant.

Finally, to the extent Defendant asserts an Amendment 821-based argument for a sentence reduction, he has not meaningfully developed this argument.  (See Motion at 4-5); see also Hernandez, 2026 WL 111639, at *9 (in recognizing pro se submissions are to be construed liberally, further observing "even a litigant representing himself is obliged to set out 'identifiable arguments' in his principal brief" (quoting Terry v. Inc. Vill. of Patchogue, 826 F.3d 631, 632-33 (2d Cir. 2016); internal quotation marks omitted).  Nonetheless, assuming for the sake of argument, Defendant is seeking and is entitled to a one-point reduction in status points, see U.S.S.G. § 4A1.1(e), such reduction would have no effect on the Guidelines range to which Defendant would have been subjected.  The Probation Department calculated Defendant's total criminal history score to be 15 points, which placed him in Criminal History Category VI.  (See PSR ¶169.)  While granting the one-point reduction Defendant presumably seeks would reduce his total criminal history score to 14 points, he would still remain in Criminal History Category VI.  See 2015 U.S.S.G. Manual, Sent'g Table, available at https://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2015/Sentencing Table.pdf (last viewed Feb. 23, 2025).  Therefore, with an unchanged Criminal History Category of VI and

19

an unaffected Total Offense Level of 51, Defendant's Guidelines range would remain as life in prison.  (See, e.g., Statment of Reasons, § III.)  Hence, Defendant's Amendment 821, Part A-based argument fails to present an extraordinary or compelling reason to reduce his sentence.

### b.    Ineffective Assistance of Counsel

Defendant lists a litany of examples of purported instances of ineffective assistance of counsel; he contends this compilation of examples rises to the level of an extraordinary and compelling circumstance warranting a reduce his sentence.  (See Motion at 6-8.)  Not so.  At their essence, Defendant's examples are various reasons challenging the validity of his conviction and sentence, which "is not properly raised in a compassionate release motion."  Rodriguez, 147 F.4th at 224.  Rather, Defendant's arguments raised in support of his ineffective-assistance-based extraordinary and compelling circumstance are subject to the rules regarding motions brought pursuant to 28 U.S.C. § 2255, which seek to vacate convictions and sentences.  See, e.g., United States v. Fernandez, 104 F.4th 420, 431-32 (2d Cir. 2024) ("Whether [defendant] couches his claims in terms of legal validity or 'justness,' he is, in substance, attacking his conviction.  And if, in substance, an inmate attacks his conviction, his filing is subject to the rules set forth in § 2255." (citation modified)).  The Defendant may not circumvent the strictures of Section 2255 by

20

re-packaging his already-rejected claims of ineffective assistance of counsel. See id.; see also United States v. Ferguson, 55 F.4th 262, 270 (4th Cir. 2022) ("[N]o matter how an inmate characterizes his request for relief, the substance of that request controls.") (cited by Fernandez Court).

Moreover, as implied, some of the examples Defendant put forth were already challenged upon appeal, and were summarily rejected by the Second Circuit. See Osborne, 739 F. App'x 11; (see also supra at 4-5 (addressing the issues challenged on appeal)). And, this Court has already considered Defendant's claims of ineffective-assistance-of-counsel in the context of Defendant's Section 2255 Habeas Motion and rejected them. See Osborne, 2022 WL 1693668; (see also supra at 5 (addressing the claims considered and rejected by this Court in ruling on Defendant's Section 2255 habeas motion)). In any event, Defendant's regurgitation of his ineffective-assistance claims, even if they could be considered here, would be found to be neither extraordinary nor compelling for the same reason this Court previously rejected them; they are without merit. See Rodriguez, 147 F.4th at 224 (instructing "even if a district court were generally permitted to consider [challenges to conviction] claim[s] in the context of compassionate-release proceedings, the particular arguments that [defendant] proffered against his sentence had already been found baseless" by the district court in

21

its Section 2255 habeas ruling so "[t]hey would not . . . have provided an appropriate basis for reducing his sentence in this case").

c.   Childhood Trauma

In addressing Defendant's childhood trauma argument in support of a sentence reduction, the Court begins with some relevant observations.  Of import: Defendant declined the opportunity to participate in the Probation Department's interview of him in its preparation of Defendant's PSR; similarly, Defendant declined to provide any contact information for any family members. (See PSR ¶174.)  Nonetheless, a probation office was able to procure a personal statement from Defendant's "mother, who provided a personal statement but declined to otherwise corroborate [Defendant's] personal history."  (Id.)  Because of Defendant's non-input and the limited input from his family, Defendant's personal and family data was "derived from a series of local probation reports, community supervision records, and a bail report".  (Id.)  Of further relevance to Defendant's childhood trauma claim, which is based upon the absence of his father (see Motion at 9), Defendant's mother maintained Defendant was "reared in a loving household", and is a "wonderful, loving person" who "never had a problem with anyone" and "never hurt or intended to hurt anyone".  (Id. at ¶177.)  Among other things, the Court considered Defendant's PSR, which it adopted, in conjunction with

imposing its sentence upon Defendant.  (See Sent'g Hr'g Minute Entry, ECF No. 413.)

Defendant's childhood trauma claim rings hollow.  First, by his non-participation in the Probation Department's interview process, Defendant attempted to foreclose the Court's consideration of his background; his asking the Court to consider his alleged traumatic childhood now does not transform this issue into an extraordinary or compelling circumstance.  In any event, the Court did consider Defendant's childhood in formulating its sentence for him, as evidenced by its adoption of Defendant's PSR, which addressed his childhood.  See generally United States v. Laurence, 139 F.4th 115, 124 (2d Cir. 2025) (instructing adoption of PSR "satisfied the district court's obligation to make an individualized assessment and state on the record the reason for imposing" its sentence) (collecting cases); United States v. Molina, 356 F.3d 269, 277 (2d Cir. 2004) ("Adopting the PSR in open court puts the defendant on notice of the grounds for the sentence imposed . . . .").

Second, while unfortunate, the absence of a parent during one's childhood is not necessarily traumatic, and Defendant's cursory, unsubstantiated claim regarding this claim does not rise to such a level; upon the record, it certainly is

neither extraordinary nor compelling.[11]   Cf., United States v. Cabral, 2025 WL 3628402, at *6 (rejecting defendant's claim of troubled childhood as extraordinary and compelling circumstance where "th[at] factor[] w[as] already properly considered at sentencing"); United States v. Farmer, No. 04-CR-0209, 2025 WL 3033762, at *6 (E.D.N.Y. Oct. 30, 2025) (rejecting defendant's claims of troubled childhood and youth as being extraordinary and compelling reasons warranting compassionate release).   Moreover, this is not a case where the facts show a youth who acted impulsively and under duress, but a case where Defendant's actions were calculated and deliberate, thereby not warranting compassionate release.   Cf., e.g., United States v. Haylock, No. 19-CR-0846, 2024 WL 4691023, at *7 (S.D.N.Y. Nov. 6, 2024); see

---

[11]  To the extent Defendant raises the issue of his youth in passing in his Reply, that argument is also unavailing.  First, since Defendant's youth is raised for the first time in his Reply, this Court need not consider it.  See, e.g., Tardif v. City of N.Y., 991 F.3d 394, 404 n.7 (2d Cir. 2021); United States v. Derounian, No. 16-CR-0412, 2024 WL 3623522, at *16 (E.D.N.Y. Aug. 1, 2024) ("Generally, courts do not consider arguments raised for the first time in a reply brief . . . ."); United States v. Landgarten, No. 18-CR-0328, 2024 WL 2133349, at *2 n.3 (E.D.N.Y. May 13, 2024) ("[A]rguments raised for the first time in a reply brief are generally deemed waived.").

Second, at the time of his arrest, Defendant was 29-years-old (see PSR at 1-2) and had been part of the Gang for approximately ten years (see id. at ¶2).  Hence, any claim of Defendant being a youth, thereby warranting consideration of a sentence reduction, vastly diminished as the decade-long period during which the Gang conspired to and engaged in calculated, illicit RICO activities transpired.  At bottom, in the instant case, Defendant's purported reliance on his youth as a basis to grant compassionate release is patently unavailing.

also Cabral, 2025 WL 3628402, at *5-6 (adopting the rationale of Haylock and finding defendant's alleged youth was not an extraordinary and compelling reason to reduce sentence).  In sum, upon the record presented, Defendant's childhood-trauma-claim is neither extraordinary nor compelling; it fails to warrant granting the relief Defendant seeks.

d.    Rehabilitation Efforts

To the extent Defendant advances an argument for a reduced sentence based upon his rehabilitative efforts, it is also unpersuasive.  (See Motion at 11.)  The Court begins by emphasizing that, notwithstanding its broad discretion in considering "all possible reasons for compassionate release," "rehabilitation alone shall not be considered an extraordinary and compelling reason." Brooker, 976 F.3d at 237-38 (citing 28 U.S.C. § 944(t) (cleaned up)); see also Policy Statement § 1B1.13(d) ("Pursuant to 28 U.S.C. § 994(t), rehabilitation on the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.").  Moreover, "[w]hat constitutes rehabilitation is left to the [c]ourt's discretion, but courts in this district have considered the following factors: [1] the defendant's 'maintenance of familial and societal relationships; [2] letters of support both from community members and prison staff; [3] conduct and disciplinary records while incarcerated; . . . [4] any achievements and education obtained while incarcerated; . . . [5]

25

gains in maturity[;] and [6] other clear signs that a defendant's incarceration has had rehabilitative value'." United States v. Vasquez, No. 96-CR-1044, 2024 WL 2385264, at *5 (E.D.N.Y. May 23, 2024) (quoting United States v. Byam, No. 12-CR-0586, 2024 WL 1556741, at *8 (E.D.N.Y. Apr. 10, 2024)) (emphasis added); see also, e.g., United States v. Qadar, No. 00-CR-0603, 2021 WL 3087956, at *10 (E.D.N.Y. July 22, 2021) (same). "At minimum, 'rehabilitation requires the court to examine whether a defendant has taken responsibility for his . . . actions and acted to reintegrate [him]self into a productive society.'" Byam, 2024 WL 1556741, at *7 (quoting United States v. Blake, 89 F. Supp. 2d 328, 346 (E.D.N.Y. 2000)).

Here, Defendant has failed to put forth evidence of rehabilitation that warrants a sentence reduction; indeed, he puts forth little more than his being enrolled in a GED program. (See Motion at 11); compare United States v. Latney, No. 18-CR-0606, 2025 WL 1126474, at *7-8 (E.D.N.Y. Apr. 16, 2025) (even where defendant (1) presented evidence of maintaining familiar relationships, (2) provided letters of support from a prison chaplain, an attorney, and fellow inmates, and (3) submitted a letter of contrition, which showed "significant strides in his rehabilitation", this Court, nonetheless, found defendant's "commendable rehabilitation [wa]s not enough"). In comparison to the efforts exhibited by Latney, Defendant's rehabilitative

26

efforts pale; for example, there is no letter of contrition or multiple letters of support from family, friend, fellow inmates, or prison staff.  Nor has Defendant presented the Court with other clear signs his incarceration has had rehabilitative value. Indeed, Defendant fails to exhibit any remorse; rather, despite the overwhelming evidence to the contrary, Defendant maintains "he has been incarcerated since he was 27 years old for these fabricated crimes."  (Reply at 2; see also id. at 6 (asserting innocence regarding involvement in the Gardner attempted murder).) In any event, "[m]aintaining good conduct in prison is not uncommon, and indeed is expected."  United States v. Garcia, No. 19-CR-0210, 2022 WL 672758, at *2 (S.D.N.Y. Mar. 7, 2022); see also United States v. Baptiste, No. 15-CR-854, 2024 WL 3425818, at *2 (S.D.N.Y. July 16, 2024) ("[A] productive institutional record while incarcerated is what is expected and is not a basis for a sentence reduction here." (citation modified)); see also, e.g., Alvarez, 2020 WL 4904586, at *7 (recognizing "model prison conduct is expected").  At bottom, upon the record presented, Defendant's rehabilitative efforts are neither extraordinary nor compelling.

e.    Declining Consideration of the Affidavits

The Court reiterates its observation that the Affidavits do not establish extraordinary or compelling reasons to reduce Defendant's sentence.  At best, liberally construes, they could potentially be viewed as "new evidence."  (See, e.g., Sur-Sur-

27

Reply at 2 (Defendant arguing Affidavits "present new, material evidence of fabrication, conspiracy, and suppression of truth").) However, the Court declines to consider this purported new evidence in the context of a compassionate release motion. Neither Affidavit addresses any of the six scenarios outlined in Policy Statement § 1B1.13, which are considered extraordinary and compelling circumstance; nor do they go to the relevant Section 3553(a) sentencing factors the Court must weigh. Rather, it appears Defendant is trying to circumvent challenging his conviction and sentence by means of a successive Section 2255 habeas petition with his request that this Court consider his "new evidence"; hence, this Court flatly rejects Defendant's proffer of said Affidavits in support of his FSA-based Motion. See, e.g., Fernandez, 104 F.4th at 431-32 (instructing a court considering a compassionate release motion may deny such motion "if, in substance, an inmate attacks his conviction, [because] his filing is subject to the rules set forth in § 2255" (citation modified)); United States v. Amato, 48 F.4th 61, 65 (2d Cir. 2022) ("If a defendant contends his conviction by a federal court is invalid, Congress has provided a vehicle to raise such a challenge through a motion pursuant to 28 U.S.C. § 2255, which imposes particular procedural limitations. A defendant cannot evade this collateral review structure by attacking the validity of his conviction through § 3582."); see also, e.g., United States v. Griffin, No.

28

07-CR-0374, 2023 WL 4208673, at *2 (E.D. Pa. June 27, 2023) (finding arguments contesting the validity and length of a defendant's sentence do not warrant compassionate release under Section 3582, as "the appropriate vehicle for doing so is a Section 2255 motion" (citation modified)) (collecting cases).

### 2.    The Section 3553(a) Factors

"[A] district court may deny a motion for compassionate release in 'sole reliance' on the Section 3553(a) [F]actors, without determining 'whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction.'" Jones, 2023 WL 8613867, at *2; see also Keitt, 21 F.4th at 73 n.4 (noting "a district court may rely solely on the § 3553(a) factors when denying defendant's motion for compassionate release"); United States v. Andrews, No. 23-8046-CR, 2025 WL 2938044, at *3 (2d Cir. Oct. 16, 2025) (summary order) (same; quoting Keitt); Jones, 17 F.4th at 374 ("[A] district court's 'reasonable evaluation of the Section 3553(a) [F]actors' is 'an alternative and independent basis for denial of compassionate release.'" (quoting United States v. Robinson, 848 F. App'x 477, 478 (2d Cir. 2021)); United States v. Mayes, No. 23-6077-CR, 2024 WL 2990909, at *1 (2d Cir. June 14, 2024) (summary order) (same; quoting Jones).

> The [Section 3553(a) F]actors include "the nature and circumstances of the offense and the history and characteristics of the

29

defendant," as well as the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" "to afford adequate deterrence to criminal conduct;" "to protect the public from further crimes of the defendant;" and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(1)-(2).

Johnson, 671 F. Supp. 3d at 283.

Other than acknowledge the Court is required to consider the Section 3553(a) Factors (see Motion at 12), Defendant has not addressed those Factors.  In comparison, the Government has.  (See Opp'n at 12-13.)  As to the "nature and circumstances of the offense" and the need to impose a sentence "reflect[ing] the seriousness of the offense", the Government maintains "the offense of conviction is extremely serious."  (Id. at 12.)  It highlights Defendant's establishment and leadership of the violent Gang, which establishment sold illegal narcotics and firearms, as well as instituting a kill policy resulting in two deaths and the permanent partial paralysis of a Gang member, all of which "is just a microcosm of Osborne's violent propensities."  (Id.)  The Government further underscores that "after being released from state incarceration, [Defendant] went right back to gang activities."  (Id.)  Nor, disconcertingly, has Defendant displayed any remorse for his illegal actions or accepted any responsibility for same.  (See id.)  Given the decade-long span of Defendant's

30

criminal activities, the Government presses for the continuation of Defendant's significant sentence to ensure "all other gang members, violent criminals, and criminals of any ilk" will not be tolerated and will be "met with the most severe criminal sanctions." (Id. at 13.) In other words, according to the Government, following such a course would promote respect for the law. (See id.) Indeed, the facts that Defendant immediately organized multiple robberies after being released from state incarceration, as well as "ordered the murder of a federal informant to avoid culpability for his crimes" demonstrate Defendant's lack of such respect. (Id.) Relatedly, the Government maintains the "significant sentence imposed communicates to the public that the criminal justice system will protect them, and that the guilty will be punished." (Id.) In addition, Defendant's continued lack of remorse underscores the need for continued specific deterrence and, therefore, counsels against a sentence reduction. (See id.) At bottom, consideration of the Section 3553(a) Factors outweigh any extraordinary or compelling reason Defendant would be able to establish and warrant the continuation of Defendant's original sentence. (See id.) The Government's arguments are persuasive.

Similar to his co-defendant, Derick Hernandez, the Court finds, specifically to this Defendant, the seriousness of his offenses is the factor weighing most heavily in favor of denying

31

his compassionate release Motion.  See United States v. Tran, No. 23-8037-CR, 2026 WL 100505, at *3 (2d Cir. Jan. 14, 2026) (summary order) (instructing district courts to conduct individualized inquiries when balancing the required Section 3553(a) Factors) (citing United States v. Rigas, 583 F.3d 108, 116 (2d Cir. 2009) ("[A] District Court must make an individualized assessment based on all the sentencing factors in § 3553(a).")); cf. Hernandez, 2026 WL 111639, at *11 (finding the seriousness of Hernandez's offense to be "the factor weighing most heavily in favor of denying his compassionate release [m]otion"); United States v. Baker, No. 97-CR-0877, 2025 WL 2733358, at *9-10 (E.D.N.Y. Sept. 25, 2025) (finding, where defendant "killed [another] in cold blood in order to obstruct justice weighing most heavily in favor of denying" sentence reduction); United States v. Duarte, No. 99-CR-0192, 2025 WL 1434886, *8 (S.D.N.Y. May 19, 2025) (finding "the heinousness and gravity of [defendant's] criminal conduct", i.e., ordering the execution of a DEA informant to prevent informant from testifying against defendant, was the Section 3553(a) Factor weighing heavily against defendant's release).  The seriousness of Defendant's offenses heavily outweighs the circumstances Defendant argues to be extraordinary and compelling, which circumstances this Court has rejects.

Moreover and relatedly, "[t]his Court has repeatedly observed in gang-related cases[, including this one]: '[G]ang

members need to know their violent, illegal activities are intolerable, and those who choose to join gangs need to know they will be prosecuted, sentenced to substantial sentences, and required to serve those sentences.'" Hernandez, 2026 WL 111639, at *11 (quoting United States v. Gerald, No. 13-CR-0141, 2024 WL 4694004, at *7 (E.D.N.Y. Nov. 6, 2024); further citation omitted); see also Lake, 2023 WL 8810620, at *6 (same); United States v. Wagner, No. 17-CR-0106, 2024 WL 2801981, at *8 (E.D.N.Y. May 31, 2024) (same, quoting Lake)); United States v. Henriquez, No. 01-CR-0537, 2024 WL 4450851, at *6 (E.D.N.Y. Sept. 17, 2024) (stating, "[t]he same holds true—and, more so—here, especially when recognizing the underlying crime was an execution-style murder" which "demonstrated disrespect for the law and, more significantly, disrespect for human life"). "It is no different here." Hernandez, 2026 WL 111639, at *11. As the Government astutely stated in opposing the compassionate release motion of Hernandez, Defendant's co-defendant and fellow Gang member, which insight the Court finds applies equally here: "What this Defendant, and his fellow Gang member coconspirators, did to Maurice Gardner, on its own, without more, require that the Defendant serve his full sentence." Id. (citation modified). As in Hernandez, in this instance, once more and specifically as to Defendant, the Court does not disagree.

At bottom and based upon the Court's individualized assessment of Defendant's case and the applicable Section 3553(a) Factors, to the extent any of the sentencing factors can be viewed as weighing in Defendant's favor, those favorable factors are outweighed by the combined force of the nature and circumstances of Defendant's offenses, and the need for the sentence imposed to: reflect the seriousness of the offense; promote respect for the law; provide just punishment for the offense; provide general and specific deterrence to criminal conduct; and assure the public it is protected.  See, e.g., Hernandez, 2026 WL 111639, at *11 (same; collecting gang-related cases arriving at substantially similar findings regarding the Section 3553(a) Factors).  "Modifying Defendant's term of incarceration, given his serious criminal conduct, i.e., the 'calculated, cold-blooded murders—planned to send a message' to rival gang members, would disserve the above important sentencing factors."  Cabral, 2025 WL 3628402, at *9; see also Hernandez, 2026 WL 111639, at *11 (stating "it would be antithetical to the purposes of the Section 3553(a) Factors to grant [Defendant's co-defendant] a sentence reduction").  In sum, Defendant's sentence of incarceration continues to be "sufficient, but not greater than necessary, to comply with the purposes of § 3553(a)."  (Statement of Reasons, § VIII (uncapitalized).)

−*−*−*−

Hence, even upon the merits of his Motion, the Court would deny the requested sentence reduction.  For avoidance of doubt:  In reaching this conclusion, the Court has considered all of Defendant's arguments, whether explicitly addressed herein or not, and finds them to be unavailing.

CONCLUSION

Accordingly, for the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion seeking a sentence reduction (ECF No. 824) is **DENIED** in its entirety and without prejudice; and

**IT IS FURTHER ORDERED**, the Clerk of the Court is directed to mail a copy of this Memorandum and Order to Defendant at his address of record, including the notation "LEGAL MAIL" on the mailing envelope.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:  February 25, 2026
        Central Islip, New York